**Donna L. FERKO–FOX, Appellee**

v.

**Jonathan P. FOX, Appellant.**

Superior Court of Pennsylvania.

Argued July 11, 2012.

Filed April 17, 2013.

Gary G. Efstration, Lancaster, for appellant.

Kenneth G. Gardner, Jr., Lancaster, for appellee.

BEFORE: BOWES, OTT, and STRASSBURGER,* JJ.

OPINION PER CURIAM:

Jonathan P. Fox ("Husband") appeals the order granting a final protection from abuse ("PFA") order in favor of Donna L. Ferko–Fox ("Wife"). We affirm.

The trial court succinctly summarized the factual and procedural history as follows:

The Plaintiff (hereinafter, "Wife") filed a Petition for Protection from Abuse and was granted a Temporary Protection From Abuse Order on March 22, 2011, which evicted the De-

fendant (hereinafter, "Husband") from the marital home, prohibited Husband from abusing Wife, prohibited contact with Wife and prohibited Husband from stalking or harassing Wife's mother. The parties appeared before the Court on the first hearing date scheduled[,] March 28, 2011. Wife requested a continuance in order to obtain counsel. Husband requested the opportunity to obtain certain tangible personal property from the parties' residence[,] from which he had been evicted per the Temporary Protection Order. Accordingly, the Continuance Order also contained a provision which directed Husband to employ a Constable to remove his specified tangible personal property from Wife's residence. A hearing was commenced on May 9, 2011, which was not completed due to insufficient time. The Temporary Protection Order remained in effect pending the continued hearing date. Husband filed a Petition for Access to the Premises to Remove Property, to Obtain Photographs, to Reschedule Hearing and to Obtain Medical Records, which was presented in family business court on June 6, 2011. The Petition was denied, excepting that Husband was directed to employ a moving company to remove his personal property from Wife's residence. The prior Order authorizing Husband to remove his tangible personal property did not achieve its purpose because the constable hired by Husband declined to physically remove the property. The hearing on Wife's Petition For Protection From Abuse was concluded on September 28, 2011, and resulted in the grant of a Final Protection from Abuse Order on November 23, 2011. The Final Protection from Abuse Order is effective for one year

* Retired Senior Judge assigned to the Superior Court.

and six months from the date it was issued.

Trial Court Opinion, 2/14/12, at 1–2 (some internal parentheses omitted).

Husband appealed from the final PFA order and raises the following issues for our review:

[1.] There was no Ex-parte Proceeding as required by 23 Pa.C.S. § 6107([b]) and no immediate and present danger requiring Ex Parte Relief to be granted before the March 28, 2012 Hearing nor continued beyond the March 28, 2011 Court appearance;

[2.] Over the Objection of Defendant, the Court erred in not having a hearing before the Court within the ten business day timeframe where "the plaintiff must prove the allegation of abuse by a preponderance of the evidence" as required by 23 Pa.C.S. § 6107(a);

3. The evidence presented was not sufficient to support the entry of an order of Protection From Abuse; AND The Trial Court's Findings are unreasonable and represent a gross abuse of discretion.

4. The trial court committed a clear abuse of discretion in not permitting Plaintiff to testify about her relatives who came to the court hearing on May 9, 2011.

Husband's brief at 4. We address the issues seriatim.[1]

We review the propriety of a PFA order for an abuse of discretion or an error of law. *Commonwealth v. Walsh*, 36 A.3d 613, 617 (Pa.Super.2012). First, Husband challenges the propriety of the temporary PFA order that the trial court entered on March 22, 2011. Husband contends that § 6107(b) of the Protection from Abuse Act mandates that a trial court conduct an *ex parte* hearing before

issuing a temporary PFA and that "a simple review of a verified petition" is inappropriate. Husband's brief at 20. In essence, Husband opines that the allegations leveled in a verified PFA petition are insufficient to sustain a finding of an immediate and present danger of abuse until a trial court tests the veracity of the assertions during an *ex parte* proceeding. *Id.* at 22. For the following reasons, we agree.

At the outset, we observe that this issue relating to the propriety of the temporary PFA is moot because the trial court entered a final PFA on November 21, 2011. Nevertheless, we find that this case falls within a recognized exception to the mootness doctrine.

In *Warmkessel v. Heffner*, 17 A.3d 408, 413 (Pa.Super.2011) (quoting *In re D.A.*, 801 A.2d 614, 616 (Pa.Super.2002) (*en banc*)), we delineated the relevant exceptions to mootness: "This Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court." The case at bar implicates the second exception, *i.e.*, due to the evanescent nature of temporary PFA orders, questions relating to the adequacy of *ex parte* proceedings are capable of repetition and apt to elude appellate review. Indeed, this Court has employed exceptions to the mootness doctrine to review issues stemming from expired PFA orders. *Shandra v. Williams*, 819 A.2d 87, 90 (Pa.Super.2003) (quoting *Snyder v. Snyder*, 427 Pa.Super. 494, 629 A.2d 977, 980 n. 1 (1993)) ("Protection

---

1. We renumbered the issues for ease of disposition.

From Abuse Act Orders are usually temporary, and it is seldom that we have the opportunity to review one before it expires."). Accordingly, it is proper for this Court to confront the pertinent issue that Husband asserts in this appeal, even though our ruling has no legal force or effect upon the order that granted Wife's temporary PFA order.

Turning to the merits of Husband's specific position regarding the interpretation of 23 Pa.C.S. § 6107, we note that the applicable standard of review is *de novo* and our scope of review is plenary. *Scott v. Shay*, 928 A.2d 312, 314 (Pa.Super.2007). In *Scott*, we outlined the parameters of statutory construction as follows:

> When we undertake statutory interpretation, our object is to ascertain and then effectuate the intention of the Legislature. 1 Pa.C.S.A. § 1921(a). When possible, this Court construes every statute so as to give effect to all of its provisions. *Id.* If the terms of a statute are clear and free of all ambiguity, we will not disregard the letter of the law in favor of pursuing its apparent spirit. *Id.* at (b). However, when the words of a statute are not explicit, this Court must determine what it was that the General Assembly intended. *Id.* at (c). We then apply the legislators' intent when interpreting the law in question. *See id.* at (a), (b), (c).

When determining legislative intent, there are a number of factors that may be helpful. *See* 1 Pa.C.S.A. § 1921(c) (listing factors to consider). Among these are the occasion, necessity and circumstances of the enactment of the statute, the mischief to be remedied and the object to be attained thereby. *McCance* [*v. McCance* ], 908 A.2d [905] at 908, 909 [Pa.Super.2006]. Also important are the consequences of our interpretation. *Id.* More specifically, we must consider whether that interpretation furthers the Legislature's purpose. *See id.*

*Id.* at 313–314.

"The purpose of the [PFA act] is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring." *Scott, supra* at 314. In *In re Penny*, 353 Pa.Super. 70, 509 A.2d 338, 340 (1986), this Court explained, "To meet the special exigencies of abuse cases, acceptable procedures have been fashioned which suspend, temporarily, the due process rights of the alleged abuser and provid[e] for summary procedures for implementation of orders." [2]

This is a case of first impression.[3] The existing case law that addresses a respondent's due process rights under the PFA does not confront the precise issue in the case at bar, either directly or inferentially,

---

2. *In re Penny*, 353 Pa.Super. 70, 509 A.2d 338 (1986), involved a prior version of the PFA, which was repealed effective 1991. The current *proviso* parallels the former statute's language: "The court may enter such temporary orders as it deems necessary to protect the plaintiff or minor children from abuse, upon good cause shown in an *ex parte* proceeding. Immediate and present danger of abuse to the plaintiff or minor children shall constitute good cause for purposes of this section."

3. In *Commonwealth v. Baker*, 564 Pa. 192, 766 A.2d 328, 330 n. 2 (2001), our Supreme Court noted that the trial court apparently failed to hold an *ex parte* proceeding prior to entering a temporary PFA order pursuant to § 6107(b). The Court characterized the omission as a procedural defect. In that case, the trial court entered the PFA order summarily based upon the allegations raised in a standardized pre-printed PFA petition. Since neither party asserted an issue challenging the trial court's failure to hold an *ex parte* hearing, the High Court declined to address the putative misstep.

nor does it stand for the proposition that an *ex parte* hearing is necessary prior to entering a temporary PFA order pursuant to § 6107(b). Indeed, those cases deal with the adversarial hearings that trial courts must hold under § 6107(a) prior to entering a final PFA order. *See In re Penny, supra* at 340 (evidentiary hearing required within ten days of petition or other exigent action—"continued suspension [of due process], irrespective of motivating factors, cannot be countenanced without judicial limits, subject to substantive or procedural restraint."); *Heard v. Heard,* 418 Pa.Super. 250, 614 A.2d 255 (1992) (absent continuance, trial court erred in issuing final PFA order beyond ten-day period set forth in § 6107(a)); *Lanza v. Simconis,* 914 A.2d 902 (Pa.Super.2006) (trial court erred in transforming *ex parte* proceeding into pseudo-adversarial hearing that lacked minimum requirements of due process). *Cf. Burke ex rel. Burke v. Bauman,* 814 A.2d 206 (Pa.Super.2002) (trial court erred in vacating temporary PFA order as improvidently granted without holding mandatory evidentiary hearing under § 6107(a) to determine merits of PFA petition); *Drew v. Drew,* 870 A.2d 377, 378 (Pa.Super.2005) (trial court erred in refusing to conduct evidentiary hearing pursuant to § 6107(a) prior to denying PFA petition). In contrast to the foregoing cases, however, the case at bar does not implicate the parties' respective due process rights during the § 6107(a) adversarial hearing; instead, this case deals squarely with the *ex parte* proceedings pursuant to § 6107(b).

■ Procedural due process is not a fixed precept, but rather, a flexible concept that "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Our Supreme Court reiterated the relevant considerations in *In re Merlo,* 609 Pa. 598, 17 A.3d 869, 872 (2011).

Determining what process is due in a particular situation

generally requires consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citation omitted).

In *Mathews, id.,* the United States Supreme Court crafted the above-referenced standard to address whether the administrative process associated with terminating social security disability benefits was constitutionally adequate. The *Mathews* Court explained that under the procedure established by the Social Security Administration ("SSA"), the state agency makes the initial determination of a claimant's continuing eligibility. The SSA then reviews that determination, and, if it accepts the state's decision, the agency terminates disability benefits subject to the claimant's right to request a *de novo* review by an administrative law judge, seek discretionary review by the SSA Appeals Council, and, if required, pursue judicial review. *Id.* at 904–905. Significantly, the *Mathews* Court pointed out that a claimant is entitled to retroactive disability benefits if he ultimately prevails. *Id.* at 905. Applying the above-referenced factors to the SSA's procedure, the Supreme Court upheld the process due to the temporary nature of the initial termination of benefits and the sev-

eral post-deprivation safeguards that the SSA built into the system, including *de novo* review and retroactive relief if the claimant prevails.

█ In contrast to the issue before the *Mathews* Court, which implicated the disability claimant's interest in the uninterrupted receipt of disability income pending final judicial review of the claim, *i.e.* the interim loss of a replaceable property interest, the precise question we face in the instant case concerning the deprivation of a respondent's liberty interest is whether the pre-deprivation procedure outlined in § 6107(b) can be applied constitutionally when the trial court's *ex parte* proceeding is limited to an *in camera* review of the PFA petition.[4] For the following reasons, we conclude that it cannot.

The pertinent provision of the PFA act provides as follows:

**(b) Temporary orders.—**

(1) If a plaintiff petitions for temporary order for protection from abuse and alleges immediate and present danger of abuse to the plaintiff or minor children, the court shall conduct an *ex parte* proceeding.

(2) The court may enter such a temporary order as it deems necessary to protect the plaintiff or minor children when it finds they are in immediate and present danger of abuse. The order

shall remain in effect until modified or terminated by the court after notice and hearing.

23 Pa.C.S. § 6107(b). Hence, the PFA act permits trial courts to temporarily suspend a respondent's rights and liberties based upon the petitioner's demonstration of an immediate and present danger of abuse at an *ex parte* proceeding. While the statute does not set forth the nature of the required proceeding, an *ex parte* proceeding would be superfluous if it failed to protect, even in small measure, the respondent's due process rights.

Lancaster County established an informal practice before the trial courts in PFA matters, as follows. The court initially reviews a PFA petition *in camera* to determine if the allegations raised in the petition establish an immediate and present danger of abuse. If the trial court determines that the four corners of the PFA petition are sufficient to support the required finding of an immediate and present danger, then it will issue a temporary PFA and schedule a hearing for a final PFA within ten days. The trial court explained the procedure as follows:

In Lancaster County, it is the prevailing practice that a verified petition for protection from abuse order, with a proposed temporary protection from abuse order attached, is presented *in camera*

---

4. In *Boyle v. Boyle*, 12 Pa. D. & C.3d 767 (1979), the Court of Common Pleas of Allegheny County addressed whether a respondent was entitled to advance notice of the *ex parte* proceeding, and it upheld the Act's validity in the face of a due process challenge. Significantly, however, consistent with our position herein, in concluding that the Act provided the respondent with sufficient procedural safeguards prior to the entry of a temporary PFA order, the *Boyle* Court envisioned an *ex parte* hearing and not merely an *in camera* review of the petition. Specifically, the *Boyle* Court reasoned, "[t]he Commonwealth, through the legitimate use of its police power, has given the courts the responsibility of reviewing the **evidence** presented at an *ex parte* **hearing**." *Id.* at 774 (emphases added); *see also id.* at 775 ("The court is mindful of the potential for misuse of the statute in *ex parte* proceedings where temporary orders are to be based on the unilateral **testimony** of a petitioner.") (emphasis added); and *id.* at 775 (trial court's ability to observe physical evidence of abuse during *ex parte* hearings militates in favor of Act's constitutionality). *Compare Boyle*, with *Blazel v. Bradley*, 698 F.Supp. 756 (W.D.Wis.1988) (victim's personal appearance is not a due process requirement for *ex parte* restraining order).

to a judge without any party being present. The judge reviews the petition to determine whether it is sufficient on its face in terms of supporting a finding of immediate and present danger to the plaintiff or minor children. The court's practice is to amend the proposed order to make it a scheduling order only if the allegations of the petition do not support such a finding. The plaintiff rarely has face-to-face contact with the judge in this process. The defendant has no participation in this process.

Trial Court Opinion, 2/14/12, at 18 n. 3.

We find that the stated practice does not comply with § 6107(b) because it reduces the procedural safeguards established within the section and increases the risk of an erroneous deprivation of the respondent's liberty.[5] Although the denial of rights under § 6107(b) is limited in duration, the temporary nature of the deprivation does not obviate the requirements of procedural due process. Even though Husband's participation in the process would have been identical regardless of the methodology that the trial court employed to review Wife's petition, there are aspects of the truth-determining process that cannot be gleaned from the four corners of a PFA petition.[6]

Indeed, an appreciable difference exists, in terms of ensuring the truthful allegations of abuse, between a review of the verified allegations listed in a PFA petition and the conduct of an *ex parte* hearing. A person may blithely execute a petition inflating claims of abuse. On the other hand, the process of appearing in court before a judge and swearing to testify truthfully would necessarily give one pause about leveling exaggerated or specious allegations against another person. Further, in-person examination of the petitioner during a hearing permits the trial court to inquire of facts and circumstances beyond the allegations that the victim delineated in the petition. It is, in practice, impossible for a trial court to discern from its review of pre-printed PFA form whether a petitioner has an improper motive, such as retaliation or to gain an advantage in another proceeding. In addition, as the trial court cogently highlighted in *Boyle, supra* at n. 3, in-person hearings enable trial courts to observe the presence or absence of physical evidence of violence such as scratches, wounds, and bruises. *See also Marquette v. Marquette*, 686 P.2d 990, 996 (Okla.App.1984) ("Although there is always some chance of erroneous deprivation, the trial court will have opportunity to judge the credibility of the petitioner prior to issuing the [*ex parte*] order. The court may be able to see first-hand the evidence of domestic violence"); *State v. Marsh*, 626 S.W.2d 223, 231 (Mo.1982) (*en banc*) (citing *Boyle* with approval).

Finally, credibility determinations are crucial components to any trial proceeding. The trial court's ability to view the petitioner's facial expressions and mannerisms during the *ex parte* hearing is critical to an ability to render its credibility determinations. For these reasons, when compared to the requirement that an alleged victim appear before a trial court during an *ex parte* proceeding, the practice of relying upon a PFA petitioner's verification and acknowledgment that any false statements

---

5. As the extent of Wife's significant interest in obtaining immediate relief from abuse and the Commonwealth's interest in protecting family members from domestic violence is undisputed, we do not address those factors specifically.

6. Under either procedure, Husband is barred from participating. He would not be entitled to have counsel present, cross-examine Wife or her witnesses, or otherwise present an explanation, justification, or defense to the petition.

are subject to the penalties of 18 Pa.C.S. § 4904, is inadequate protection against fabricated allegations of abuse.[7] That shortcoming is particularly apparent in light of the only perceived benefit of *in camera* review, judicial economy. To be sure, assuming that the trial court convenes an *ex parte* hearing upon its receipt of the PFA petition with the same urgency that it would review the petition *in camera*, the *ex parte* hearing would protect the respondent's due process rights without delaying the immediate relief the petitioner seeks.

As we conclude that Lancaster County's informal practice fails to provide the parties to a PFA petition the procedural safeguards required to ensure justice, we cannot countenance the practice. Accordingly, we hold unequivocally that absent an exigent circumstance that prevents a petitioner's appearance, due process mandates that a trial court convene an *ex parte* hearing prior to entering a temporary PFA order pursuant to § 6107(b). Nevertheless, since a final PFA order was entered herein following a full adversarial proceeding, the lack of an *ex parte* hearing in the present matter is not grounds for reversal of the final PFA order.

Next, we address Husband's second claim, that the trial court violated his due process rights by failing to hold a hearing on the merits of Wife's request for a final PFA order within ten days of the date she filed her PFA petition. However, recognizing that the trial court, in fact, initiated the pertinent PFA hearing on March 28, 2011, within the ten-day period, the crux of the complaint Husband raises in his brief actually challenges the trial court's deci-

sion to grant Mother's request to continue the March 28, 2011 hearing so that she could obtain legal representation. For the following reasons, no relief is due.

■ This Court reviews a trial court's decision to grant or deny a continuance for an abuse of discretion. *Baysmore v. Brownstein,* 771 A.2d 54, 57 (Pa.Super.2001). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." *Id.*

Herein, Wife asked to continue the PFA hearing so that she could engage counsel. During the March 28, 2011 hearing, Wife explained that she contacted MidPenn Legal Services immediately after filing the PFA petition on March 22, 2011, in order to see if that organization would represent her. N.T., 3/28/11, at 2. However, MidPenn Legal Services could not accommodate Wife at that time. *Id.* at 2. Accordingly, it advised Wife to request a continuance and return to the organization to see if it could represent her during the re-scheduled hearing. *Id.* at 2–3.

■ Husband countered that, notwithstanding Mother's right to request a continuance, he was entitled to a hearing on the final PFA order within the ten-day period prescribed in 23 Pa.C.S. § 6107. *Id.* at 5–6. In its Rule 1925(a) opinion, the trial court found this issue waived. However, since Husband clearly leveled an ob-

---

7. Instantly, the PFA petition was prepared on Wife's behalf by a representative of the Domestic Violence Clinic. While Wife signed the petition on March 22, 2011, she failed to specifically execute the portion of the form that set forth the verification language. Thus,

even if we were to assume that a trial court's *in camera* review of a verified petition was tantamount to an *ex parte* proceeding, the veracity of Wife's allegations in the instant case was never actually verified.

jection to the delay associated with the requested continuance, the certified record does not sustain the trial court's finding that this issue is waived due to Husband's failure to raise it during the hearing. Accordingly, we address the merits of Husband's argument herein.

■ Pursuant to § 6107(c), trial courts have discretion to continue evidentiary hearings regarding final PFA orders and enter appropriate temporary *ex parte* orders to cover the intervening time. *See* 23 Pa.C.S. § 6107(c) ("If a hearing under subsection (a) [relating to evidentiary hearing on final PFA order] is continued and no temporary order is issued, the court may make ex parte temporary orders under subsection (b) as it deems necessary."). Keying on the conjunction "and" in the *proviso*, Husband asserts that subsection (c) is inapplicable in the instant case. Husband's brief at 15. Husband posits that the provision does not apply where, as here, a trial court issued the temporary *ex parte* order pursuant to § 6107(b) before continuing the evidentiary hearing. *Id.* at 15–16. We reject Husband's premise that the trial court's ability to grant a continuance is dependent upon the absence of a previously entered *ex parte* order. In actuality, it is clear to this Court that the provision simply accords trial courts the authority to enter *ex parte* orders, if needed, in order to protect a petitioner from abuse pending the continuation of the evidentiary hearing. Accordingly, Husband's contrary interpretation of the trial court's statutory authority to continue the evidentiary hearing is unpersuasive.

■ Moreover, the trial court did not abuse its discretion herein. In granting Wife's request for a continuance, the trial court reasoned,

I certainly recognize that [a continuation] does result in some cases, more than an inconvenience to a defendant that at the present time does not have anything proven against him. But by the same token, I think it's important that whether it's a plaintiff or a defendant that they have counsel. This is a very significant situation for both parties. And if MidPenn is the source for counsel for [Wife], I'm not going to foreclose that opportunity for her. If there's an issue with Mr. Fox needing to get personal property we can talk about that, certainly.

*Id.* at 6–7. As the trial court's reasoning is founded firmly upon Wife's outstanding need to retain counsel despite her timely attempt to engage MidPenn prior to the hearing, we will not disturb the trial court's decision to grant the requested continuance.[8]

Next, we turn to Husband's third issue, which he frames as a sufficiency of the evidence claim.

When a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference[s], determine whether

---

8. Although we find that the trial court did not abuse its discretion by granting the requested continuance so that Wife could obtain counsel, we must emphasize that the resultant six-month delay between the March 2011 PFA petition and the conclusion of the evidentiary hearing during September 2011 is inexcusable. While we are cognizant of the scheduling difficulties that trial courts encounter on a daily basis, we stress that it is imperative to promptly schedule PFA proceedings in order to effectuate the purpose of the PFA Act and to protect a respondent's significant interest in mounting a defense to the allegations leveled in the PFA petition.

the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it. Furthermore, the preponderance of the evidence is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence.

*Thompson v. Thompson*, 963 A.2d 474, 477 (Pa.Super.2008) (quotations and citations omitted).

Herein, Wife testified that Husband hurt her previously, that she has feared him for an extended period, and that two specific instances formed the genesis of her PFA petition. N.T., 5/9/11, at 4. First, during January 2011, Husband screamed in Wife's face and shoved her while the couple argued over household finances. Wife attempted to flee from Husband by running up the steps to the second floor of their home; however, Husband caught Wife near the top step, grabbed her leg, pulled her down the stairs by her feet, and sat on her and pinched her arms until she released a document that he wanted. *Id.* at 5–6, 36. After she wrestled free, Wife ascended the stairs again, barricaded herself in a bed-room, and hid. *Id.* at 6. Husband assaulted Wife fully aware that she only recently had a collar associated with a discectomy removed from her neck. *Id.* at 5–6. In addition, to re-injuring her neck, Wife hurt her shoulder, and sustained a bruised shoulder and leg during the altercation. *Id.* at 5–6, 36.

In the course of a subsequent incident that occurred approximately one month later, Husband shoved Wife repeatedly during another argument over household finances. *Id.* at 7. Wife explained, "he would do that often. He would throw me against the wall or push me, pinch my arms, grab my arms." *Id.* She continued, "if I had a problem, he would shove me. He would yell at me. He would belittle me every single day.... [H]e would put me down; told me I was crazy; told me that if I ever tried to get anyone to help me or [told] the police about anything that he did[,] ... they wouldn't believe me because I was crazy...." *Id.* at 8. In addition, Wife testified that she was still afraid that Husband would hurt her. *Id.* at 9. Thus, it is apparent from Wife's testimony during the adversarial hearing that Husband's conduct during the two instances constituted abuse as defined by the PFA statute.[9]

9. 23 Pa.C.S. § 6102(a)(1)–(5) provides as follows:

**(a) General rule.**—The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

"**Abuse.**" The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies

Instead of asserting that Wife failed to adduce evidence during the evidentiary hearings in order to establish, by a preponderance of the evidence, the elements of a final PFA order, Husband simply challenges the trial court's findings of fact. Thus, in reality, Husband's purported challenge to the sufficiency of the evidence is a challenge to the weight of the evidence. Indeed, Husband's entire argument is devoted to an attempt to discredit Wife's testimony and elevate the integrity of his own. For example, Husband denies that he abused Wife or had any involvement in Wife's "fall" down the stairs in January 2011. He also asserts that Wife's description of the January incident differs from that of her witnesses. Furthermore, Husband attempted to trivialize Wife's claims of abuse by arguing: (1) that if Wife had been subjected to repeated abuse as she alleges, she would have contacted the authorities before March 2011; (2) that Wife's decision to file a PFA petition was politically motivated; and (3) that Wife's testimony is incredible because she failed to mention the January stair incident to her neurologist.

Nevertheless, notwithstanding Husband's protestations to the contrary, the trial court made a credibility determination in Wife's favor and against Husband. Specifically, the trial court reasoned as follows:

> Wife was sincere and credible in the course of her testimony. She was noticeably agitated and anxious in the presence of Husband. Wife's version of the incident which occurred on the stairs within the parties' home and which led ultimately to the filing of her [PFA] Petition was substantially corroborated by two witnesses. While some of the details related by Wife and by the two witnesses did not conform perfectly, the lack of such conformity supports the veracity of the material aspects of Wife's testimony, rather than undermines it. The testimony, taken in its totality, supported Wife's allegations that physical abuse did, in fact, occur.

PFA Court Opinion, 2/14/12, at 13.

This Court must defer to the trial court's determinations regarding the credibility of witnesses at the hearing. *Thompson, supra* at 477; *R.G. v. T.D.*, 448 Pa.Super. 525, 672 A.2d 341, 342 (1996). Thus, we find that the trial court did not abuse its discretion in finding that the evidence warranted the issuance of a final PFA order pursuant to § 6102(a).

Finally, Husband argues that the trial court erred during the May 9, 2011 PFA hearing by preventing him from cross-examining Wife about her relatives who were present at the hearing. Husband's brief at 29.

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*McManamon v. Washko*, 906 A.2d 1259, 1268–1269 (Pa.Super.2006) (citation and ellipsis omitted).

During cross-examination, counsel for Husband asked Wife "[a]nd you've loaded the courtroom with a lot of relatives here. Tell us who is in the back of the

only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

courtroom." N.T., 5/9/11, at 20. Wife objected on the grounds of relevance. Husband proffered that the answer would establish Wife's "support network." *Id.* The trial court sustained Wife's objection, reasoning that the presence of non-testifying relatives in the courtroom "had no relevance to the [c]ourt's determination of what took place between Husband and Wife, nor was it relevant to the issue of what, if any, relief the [c]ourt might deem appropriate once the facts were determined." Trial Court Opinion, 2/14/12, at 21–22. Mindful that irrelevant evidence is inadmissible, *see* Pa.R.E. 402, we discern no error in the PFA court's assessment. Simply stated, the extent of Wife's support network does not tend to establish or disprove whether Husband "abused" Wife as the term is defined in the PFA Act. *See* Pa.R.E. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").[10]

For all of the foregoing reasons, we affirm the November 21, 2011 order granting Wife's petition for a final PFA.

Order affirmed.

Judge OTT files a Dissenting Opinion.

### DISSENTING OPINION BY OTT, J.

Because I disagree with the majority's conclusion that verified allegations contained in a protection from abuse action ("PFA") petition are insufficient to meet

the requirements of 23 Pa.C.S. § 6107, I respectfully dissent.

I strongly disagree with the majority's conclusion that the procedure followed in Lancaster County violates the due process rights of the alleged perpetrator because the petitioner is not required to testify in person to the **verified** petition. The majority is concerned the verification contained in the petition is "inadequate protection against fabricated allegations of abuse." They conclude the court's failure to observe the petitioner's facial expressions and mannerisms precludes an assurance that the facts averred are truthful. I believe this concern is unwarranted.

Commencement of a PFA action is governed by 23 Pa.C.S. § 6106(a). Pennsylvania Rule of Civil Procedure No.1905 provides the standardized forms required for use in all PFA actions. This petition form includes a verification subjecting the signatory to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities. Additionally the Legislature imposes, in 23 Pa.C.S. § 6106(a.1), specific penalties for a PFA petitioner "who knowingly gives false information to any law enforcement officer with the intent to implicate another under this chapter commits an offense under 18 Pa.C.S. § 4906 (relating to false reports to law enforcement authorities)."

I also disagree with the reason put forth by the majority that the Lancaster County procedure is a *per se* violation of the alleged abuser's due process rights. The statute provides that temporary orders may be obtained in an *ex parte* proceeding

---

**10.** Effective March 18, 2013, Pa.R.E. 401 will be restyled as the "Test for Relevant Evidence." Notwithstanding the stylistic revision, the rule will maintain its original substance as follows:

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
(b) the fact is of consequence in determining the action.
*See* Supreme Court Order 13–0005, Rescinding and Replacing the Pennsylvania Rules of Evidence, 1/17/13.

conducted by the court. Because the petitioner is in the courthouse awaiting the executed order, the court if unsure could quickly conduct *in camera* questioning.

In the present case, the violation of respondent's right to due process was not caused by the granting of an *ex parte* temporary order but rather by the exceptional delay between the filing of the petition and the hearing. While Section 6107(c) provides for continuances of the temporary PFA order, here the petition was filed on March 22, 2011, two continuances were granted and two hearings were held prior to the final order being entered on November 23, 2011. The delay of eight months should be the cause for concern not the original procedure used for granting the temporary order.

Therefore, I do not believe the reasons set forth by the majority justify their pronouncement that the procedure used by Lancaster County is a *per se* violation of the due process rights of the alleged abuser.