J-A02041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SUSAN L. GRAY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT C. GRAY, | : | |
| | : | |
| Appellant | : | No. 612 MDA 2015 |

Appeal from the Order Entered March 5, 2015
in the Court of Common Pleas of Franklin County Civil Division
at No(s): 2015-742

BEFORE: PANELLA, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:               **FILED APRIL 21, 2016**

Appellant, Robert C. Gray ("Husband"), appeals from the order entered in the Franklin County Court of Common Pleas, which granted the petition filed by Appellee, Susan L. Gray ("Wife"), pursuant to the Protection from Abuse ("PFA") Act.[1] Husband argues the trial court committed error when it found sufficient evidence to support a final PFA order, permitted Wife to testify, and used an incorrect legal standard. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S. §§ 6101-6122.

Husband and Wife were married in 1997 and are the parents of three sons. On February 23, 2015,[2] Wife filed a PFA petition. Therein, she indicated that Husband had "weapons present on the property," but she did not request that Husband relinquish his weapons. PFA Pet. at 1; *id.* at Attach. A. That same day, the trial court granted a temporary PFA order and scheduled a hearing on the petition for March 5, 2015.

Before she testified, the trial court informed Wife, "Mrs. Gray, you can testify from counsel table[.]"[3] N.T., 3/5/15, at 7. Husband did not object. Wife testified that she separated from Husband on February 1, 2015 "based on fear of [Husband's] threats to me." *Id.* at 8. She described the most recent incident where she felt threatened by Husband:

> On January 23rd around 7 p.m. he was in the bedroom sitting in a chair by a computer and I brought to his attention that we had spoke[n] about his depression, based on me, why he was depressed. He said he was depressed about me and his job, and then I asked him, I said, I'm very concerned about the guns in the house, your safety, and the family's safety, issues that have gone on in the past with other people that I know. Could he please remove the guns from the home and he said no. It would be a cold day in hell, and he looked [sic]. I said, but I'm worried about you meaning I'm worried about you and depression. He said no, it's not me that

---

[2] At the time Wife filed the petition, she averred their older son was fifteen years old, and their twin sons were thirteen years old. PFA Pet., 2/23/15, at 2 (unpaginated).

[3] The trial court provided Wife with this accommodation so that she would not have to navigate the courtroom, as she has a visual impairment. Trial Ct. Op., 6/10/15, at 7 n. 3.

you'll have to worry about. He looked at me and he said, no, you'll be the first to know.

*Id.* at 8-9.

She explained that she perceived this exchange as a threat because

if someone turns around and looks you in the eye in a very close distance at which I can see and makes that – I would take that as a threat. You will be the first to know and not removing the guns from the house.

*Id.* at 9.

Wife's counsel asked if Husband had made "any statements in the past," and Wife responded:

Yes, exactly about the target. Five weeks before that he was at a target range practice, and that's when he had said about – he brought it home to show, you know, he had it, that he hit below the belt. He hit in the middle of the chest and perhaps that could be me, that could be a Susan. It could be Susan.

\* \* \*

[H]e left the target in the bedroom for five weeks until he acknowledged my behavior that I was nervous, anxious. Was I feeling okay. I didn't know what to say, how to address the issue, and the Wednesday before February 1st he removed the target from the bedroom.

*Id.* at 10-11.

Wife also described an incident that occurred the previous July where Husband broke her phone while the family was on vacation and then left her and their children at a restaurant. *Id.* at 11-12. She additionally explained

that since she separated from Husband, she and her son were in the bathroom Husband used in the family home and found "a fully loaded clip with bullets in it." *Id.* at 14.

On cross-examination, Husband's Counsel asked Wife about her contact with the Women in Need ("WIN") organization:

> [Husband's Counsel:] Okay, I'm sorry, one more time. When did you contact WIN about [the] conversations?
>
> [Wife:] After our target – after the target practice and the mention with the guns and the suicide, in January I spoke to a Megan, and she . . . started counseling me about the particular situation.
>
> There is other emotional issues here that they have helped me with in regards to other things that have gone on in the home but this is outside this situation.
>
> [Husband's Counsel:] So when was that conversation with Megan?
>
> [Wife:] After January 23rd she was not available. I contacted her that Monday around 9:00 a.m.
>
> [Husband's Counsel:] What day would that have been?
>
> [Wife:] Let's see that was the –
>
> [Husband's Counsel]: I'm going to object. I would like the witness to answer this question from her own memory.
>
> [Trial Court]: Okay, well – a calendar – I don't know that a calendar is an improper –
>
> [Wife]: That would be the 25th.

[Husband's Counsel]: That's fine, but I think we're having some issues with some dates here.

*Id.* at 24-25.

On re-direct examination, the following occurred:

[Wife's Counsel]: Can you just address whether you were especially concerned of [Husband's] statements to you?

[Husband's Counsel]: Objection, Your Honor. Leading.

[Trial Court]: Well, I don't – the part about being especially concerned.

[Wife's Counsel]: She's already testified that she was concerned.

[Trial Court]: That may not be it, but what part of –

[Husband's Counsel]: I believe counsel is coaching the witness. **I mean, I have no objection. She has a disability. It's fine to testify from counsel table, but she's obviously being coached by counsel as to her particular testimony.**

[Trial Court]: Well, give me an example in this question what you're talking about because this is the type of proceeding, [Husband's Counsel], where the [c]ourt can probably assume that all parties are especially concerned when they walk in the door if that's your objection.

[Husband's Counsel]: That's – I'll let you hear the question, but I believe she's going to try to elicit some testimony that's outside the scope of the complaint and certainly outside the scope of cross-examination.

[Trial Court]: Okay.  All right, then do you want to alert—since you're aware of that do you want to alert

- 5 -

> the [c]ourt to what it might be so we can rule on it without hearing it[?]
>
> [Husband's Counsel]: We saw some issues for the first time yesterday afternoon in answer to a custody complaint. . . . The testimony about, in this case, [Husband's] alcohol consumption showed up in that.
>
> [Trial Court]: I prohibited [Wife's Counsel] from asking about that. You're thinking that there's more like that?
>
> [Husband's Counsel]: I believe that's where she was going.
>
> [Wife's Counsel]: That was certainly not where my question was going.
>
> [Trial Court]: Proceed.
>
> [Husband's Counsel]: I apologize, Your Honor, **I withdraw the objection**.

*Id.* at 39-41 (emphases added). Wife continued and testified that Husband has "been drinking more beer than normal[.]" *Id.* at 41. Husband's Counsel did not object to this testimony or during the duration of Wife's re-direct testimony. *See id.* at 41-43.

Husband testified he never threatened Wife with a gun or threatened her life, health, or safety in any way. *Id.* at 47-48. He acknowledged a conversation about the target he used when shooting but denied calling it "Susan." *Id.* at 53-54. He explained he kept it in the bedroom because he intended to reuse it, and he had "slid [it] in between the dresser and the

wall . . . standing right up." *Id.* at 54. He agreed that he "smashed"[4] Wife's phone in July, but he testified he did not threaten her when doing so, and that he knew Wife was "fine" because his sons had their phones. *Id.* at 52.

At the conclusion of testimony, the trial court granted Wife's petition for a final PFA order. *Id.* at 73; PFA Order, 3/5/15. Husband filed a timely notice of appeal on April 6, 2015, and a court-ordered Pa.R.A.P. 1925(b) statement on May 11, 2015.

Husband raises the following issues for review:

> [I]. Whether the evidence in this matter was insufficient to support the issuance of a final [PFA] order as it failed to meet the definition of abuse as defined in the Protection From Abuse Act[?]
>
> [II]. Whether the [t]rial [c]ourt committed an error of law, or committed an abuse of discretion, when it permitted [Wife] to testify from counsel table rather than the witness stand where she was repeatedly counseled by her attorney throughout her testimony[?]
>
> [III]. Whether the [t]rial [c]ourt committed an error of law, or committed an abuse of discretion, when it allowed [Wife's] attorney to lead [Wife] by suggesting testimony to support the applicable legal standard despite [Wife's] prior contradictory testimony, over the objection of [Husband's] counsel[?]
>
> [IV]. Whether the [t]rial [c]ourt committed an error of law, or committed an abuse of discretion, when [Wife] was permitted to testify, over the objection of

_____

[4] Husband explained that he was upset with Wife for telling their children about the divorce during the family trip and for not answering his five phone calls when he was looking for her. N.T. at 50-51.

- 7 -

> [Husband's] counsel, to matters which were outside the scope of the PFA Complaint[?]
>
> [V]. Whether the [t]rial [c]ourt committed an error of law, or committed an abuse of discretion, when it used an improper standard to sustain the court's conclusion by a preponderance of the evidence to support the issuance of a final [PFA] order[?]

Husband's Brief at 7.

For Appellant's first issue, he argues there was insufficient evidence adduced to enter a final PFA order. *Id.* at 15. He contends the trial court failed to consider inconsistencies in Wife's testimony. *Id.* Husband also opines that Wife could not have been in reasonable fear of imminent bodily injury because she did not request that he relinquish his weapons in her application for a temporary PFA. *Id.* at 19. We discern no basis for relief.

We review PFA orders for an abuse of discretion or an error of law. *Ferko-Fox v. Fox*, 68 A.3d 917, 920 (Pa. Super. 2013).

> When a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference[s], determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers credibility determinations of the trial court as to witnesses who appeared before it. Furthermore, the preponderance of the evidence is defined as the greater weight of the evidence, *i.e.*, to tip the scale slightly is the criteria or requirement for preponderance of the evidence.

*Id.* at 926-27 (citation omitted).

- 8 -

The burden at a PFA hearing is on the petitioner "to prove the allegations of abuse by a preponderance of the evidence." 23 Pa.C.S. § 6107(a). Section 6102(a) enumerates several definitions of abuse. The relevant definition to this appeal is "[p]lacing another in reasonable fear of imminent serious bodily injury." *Id.* § 6102(a)(2). "In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury . . . . Appellant's intent is of no moment." *Raker v. Raker*, 847 A.2d 720, 725 (Pa. Super. 2004).

Instantly, Wife testified she separated from Husband because he made threats against her. N.T. at 8. She explained Husband's display of his shooting target and his comment that "it could be Susan" put her in fear for her life. *Id.* at 9-10; *see also id.* at 25 (explaining on cross-examination that after the particular conversation with Husband she was "fearful" for her life). Husband challenges Wife's credibility; however, it was for the trial court to make credibility determinations. *See Ferko-Fox*, 68 A.3d at 927. His attempt to discredit her testimony is not a challenge to its sufficiency, but the weight the trial court placed on it. *See id.* at 928. We discern no abuse of discretion or error of law by the trial court in determining the greater weight of the evidence supported the issuance of a final PFA order. *See id.* at 927.

Husband's next three issues involve claims of error during Wife's testimony. For Appellant's second issue, he argues the trial court erred in

permitting Wife to "be counseled by her attorney during her testimony." Husband's Brief at 26. His position is that "the proximity of [Wife] to her counsel" and the "interactions that counsel was having with [Wife]" were improper. *Id.* at 27. He argues the "interaction was especially damaging when [Wife] was . . . shown dates on a calendar when opposing counsel was questioning her recollection . . . ." *Id.* For Appellant's third issue, he reiterates, in a two-sentence argument section, that Wife's Counsel improperly coached Wife during her testimony. *Id.* at 28. Next, Appellant argues it was error for the trial court to permit Wife to testify to issues outside the scope of the PFA petition. *Id.* Specifically, he objects to Wife's testimony regarding Husband's drinking. *Id.* at 29-30. We hold no relief is due.

Our law is clear that,

> [i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in a waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction, . . . one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*Thompson v. Thompson*, 963 A.2d 474, 475-76 (Pa. Super. 2008) (citation omitted). "Also, an appellant may not raise a new theory for an objection made at trial on his appeal." *Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa. Super. 2003).

Instantly, when Wife referenced a calendar to answer a question on cross-examination, Husband's Counsel objected. N.T. at 25. His specific objection was that he wanted the witness "to answer from her own memory." *Id.* After the trial court ruled a calendar was not improper, Husband's Counsel replied, "[t]hat's fine." *Id.* He did not object on the basis of Wife's proximity to her counsel or coaching. *See id.* Furthermore, during Wife's redirect examination, Husband's counsel objected on the basis of leading. *Id.* at 39. When asked to clarify the objection, Husband's Counsel noted he had no objection to Wife testifying from counsel table, but made a reference to Wife's Counsel's coaching. *See id.* However, when the trial court asked for an example, Husband's Counsel again changed the nature of his objection to the scope of the testimony. *Id.* at 40. Finally, when Wife's Counsel informed the trial court she did not intend to elicit testimony outside the scope of the PFA petition, Husband's Counsel **withdrew** his objection. *Id.* at 41. Further, Husband did not object to Wife's testimony regarding his alcohol consumption. *See id.* at 41-43.

Therefore, Husband waived[5] his second, third, and fourth issues for failure to raise timely and **specific** objections, and he cannot raise a new theory of relief on appeal.[6] *See Thompson*, 963 A.2d at 475-76; *Duffy*, 832 A.2d at 1136.

---

[5] We note, with disapproval, Husband's second, third, and fourth issues are devoid of any citation to legal authority. *See* Pa.R.A.P. 2119(a). It is well-settled that "the failure to develop an argument with citation to, and analysis of relevant authority waives that issue on review." *Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1279 (Pa. Super. 2005) (citations omitted). Had Husband properly preserved these issues, we could conclude he waived review of these challenges on this basis. *See id.*

[6] We observe Husband's Counsel elicited testimony from Husband regarding his drinking:

> [Husband's Counsel]: In the conversation that you had with her on Sunday or any conversation you had with her between January 23rd and January 31st, did she indicate to you at any point in time that she felt threatened by you?
>
> [Husband]: No.
>
> [Husband's Counsel]: Did she indicate she was upset with you?
>
> [Husband]: Yes.
>
> [Husband's Counsel]: For what?
>
> [Husband]: She felt I drank too much.
>
> [Husband's Counsel]: I noticed that came up. How much do you drink?
>
> [Husband]: One to three beers, and actually since February 1st I haven't. I've had three beers. One was last time with my mom at dinner. I know that

Finally, Husband purports to challenge the legal standard the trial court applied in determining whether petitioner met her burden of proof for a final PFA order. Husband's Brief at 30. However, review of his argument reveals he is challenging the sufficiency of the evidence presented and the trial court's findings of fact. *See id.* at 30-33. For example, Husband contends, "it was patently unreasonable to believe that [Wife] was placed in actual fear when she could not remember when the conversations occurred, or the words that [Husband] used with any indicia of reliability or consistency." *Id.* at 32. Husband is due no relief.

As discussed *supra*, our review of the record indicates the trial court did not abuse its discretion in granting Wife's petition for a final PFA order. *See Ferko-Fox*, 68 A.3d at 920. The trial court was free to credit Wife's testimony and conclude she was in reasonable fear of imminent bodily injury.[7] *See* 23 Pa.C.S. § 6107(a); *Ferko-Fox*, 68 A.3d at 927

Based on the foregoing, we affirm the trial court's order.

---

[Wife] specified a number that is totally inaccurate. I'm 116 pounds. No one has seen me in the last 20 years intoxicated.

*Id.* at 62-63.

[7] Similarly, Husband filed a reply brief wherein he argues, *inter alia*, that Wife "was inconsistent throughout her testimony about whether she was afraid, specifically what words placed her in fear, and when conversations occurred." Husband's Reply Brief at 10. Husband also points to facts that are not of record in this case. *Id.* at 3. We have considered all the arguments and the facts that are of record in arriving at our disposition.

- 13 -

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2016