J-S38019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHADIYA KHANKHODJAEVA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IKROM TOLIBOV | : | |
| | : | |
| Appellant | : | No. 1083 EDA 2023 |

Appeal from the Order Entered April 6, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2023-03888

BEFORE:   LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:              **FILED DECEMBER 14, 2023**

Ikrom Tolibov appeals from the final order entered against him under the Protection From Abuse (PFA) Act, 23 Pa.C.S.A. §§ 6101–6122.  We affirm.

On March 7, 2023, Shadiya Khankhodjaeva applied for a temporary PFA order against Tolibov, on behalf of herself and the parties' two minor children. The trial court granted a temporary order, with a hearing scheduled for March 17, 2023.  The parties, as well as counsel for the children, appeared on the date of the scheduled hearing.[1]  The trial court entered an order striking the petition on behalf of the children only.  At Tolibov's request, the court entered a separate order continuing the hearing with respect to Khankhodjaeva, to April 6, 2023.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The record does not contain a transcript of this proceeding.  A different judge presided than the judge who entered the order at issue in this appeal.

On April 6, 2023, the parties appeared in court again for the rescheduled hearing. Tolibov asked for a ten-day continuance to retain counsel. Counsel for Khankhodjaeva objected to the continuance, stating that Tolibov had requested the previous continuance to "the next listing date" to seek counsel, and that Tolibov already had counsel in the parties' custody case. The trial court denied Tolibov's continuance request.

The trial court found the following facts, identifying Tolibov as Father and Khankhodjaeva as Mother:

> At the time of the hearing, the parties operated under a temporary custody agreement in which Mother had primary physical custody and Father exercised partial physical custody during three out of four weekends in a month. Mother testified that Father was not in the country for approximately two and a half months and returned to Mother's home on or about Friday, March 3, 2023 without her knowledge. Mother agreed to allow Father to take the children the next day, March 4, 2023, for a weekend visit. The parties agreed that Mother would pick up the children Saturday morning and take them to their karate class. After the class, Mother and the children stopped at Mother's home for a short period of time so the children could eat.
>
> While the children were eating, Mother received a phone call from Father who was "very angry and yelling" at Mother. Mother testified that Father demanded to know why she did not bring the children back to his house immediately after the class. Mother explained that she brought the children to her home because they were hungry but they had finished eating, and they could exchange custody soon.
>
> Mother testified that Father came to Mother's house within ten minutes and began honking the horn of his car. Father then exited his vehicle and began "yelling and cursing." Mother went outside to tell Father that he was scaring the children and Mother's mother. After Mother went back inside the house, Father began repeatedly kicking the front door, leaving a visible footprint. Mother testified that she asked her mother to take the children

into a bedroom and called 911 "because I was terrified" and "was afraid for my safety..."

Mother testified that she had installed a security camera in January of 2023 on her front door after her car window and headlights were smashed. Counsel for Mother showed two security camera videos to the court from March 4, 2023. Mother testified that the first video showed Father shouting that he was going to "teach me a lesson" and "threatening me to rape me. He was showing that he is going to rape me in my mouth." The second video showed Father ripping the security camera from the door. Mother later found the security camera in the garden near the front of the door.

When police officers arrived, they spoke with Mother and Father. Father told the police officer that the security camera fell off the door on its own and "that he was not kicking or anything." Mother then showed the police officer videos from the camera. The officer advised the parties to conduct custody exchanges at the Springfield Police Department for everyone's safety.

Mother testified to several past incidents where she felt unsafe. She testified that Father "would throw things at me, at my car," and "[h]e would call me names, show me the middle finger in public." She also testified to a prior incident of physical abuse when Father choked her while she was pregnant; "he grabbed me by the neck because he was angry with me and he was choking me." Mother testified that "I want protection. I don't feel safe. I don't feel safe around him..."

Father generally denied Mother's allegations, claiming that Mother "has been manipulating [him] with the kids" and repeatedly denying him custody. With respect to the allegation that he kicked Mother's door, Father testified "I don't remember what happened that day . . . I don't think I did." With respect to the allegation that he damaged the security camera, Father testified "I pulled the camera off" but that the camera "was already hanging" and was old ("she had this camera past year and a half").

Trial Court Opinion, 6/22/23, at 3–5 (record citations omitted, capitalization altered).

The trial court found Khankhodjaeva to be credible and Tolibov to be incredible. It entered a final PFA order against Tolibov. Tolibov timely appealed. Tolibov and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Tolibov presents two questions for our review:

Did the [trial court] violate [Tolibov's] due process rights by denying [his] request for a continuance of the Final [PFA] Hearing, so that [Tolibov] could retain legal counsel to represent him at the Final [PFA] Hearing[?]

Did the trial court [commit] an abuse of discretion and [commit] an error in law in finding by a preponderance of evidence that [Khankhodjaeva] had presented sufficient admissible evidence of abuse, as defined by the [PFA Act], to warrant the entry of a Final [PFA] Order against [Tolibov]?

Tolibov's Brief at 3.

Tolibov first challenges the trial court's denial of his oral motion to continue the hearing on April 6, 2023. He contends that the trial court abused its discretion by violating his substantive due process right to retain counsel.

This Court reviews a trial court's order granting or denying a request for a continuance to determine whether the trial court abused its discretion. *Ferko-Fox v. Fox*, 68 A.3d 917, 925 (Pa. Super. 2013) (citation omitted). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." *Id.*

- 4 -

Several factors are relevant to a trial court's discretion in denying a continuance. These include "whether there was prejudice to the opposing party by a delay, whether opposing counsel was willing to continue the case, the length of the delay requested[,] and the complexities involved in presenting the case." **Papalia v. Montour Auto Serv. Co.**, 682 A.2d 343, 345 (Pa. Super. 1996) (citations omitted). Notably, it does not violate due process to hold a PFA hearing with an unrepresented party. **R.G. v. T.D.**, 672 A.2d 341, 343 (Pa. Super. 1996). A litigant bears the consequences of failing to secure counsel, as the legislature has not created a right to court-appointed counsel at a PFA hearing. **Id.** (citing **Weir v. Weir**, 631 A.2d 650, 657 (Pa. Super. 1993)).

Here, the trial court observed that Khankhodjaeva objected to Tolibov's continuance request, and counsel represented that the hearing had been continued to the "next listing date" at Tolibov's request. Trial Court Opinion, 6/22/23, at 7. The court considered Tolibov's request during the rescheduled hearing in light of this procedural history, noting that Tolibov had managed to engage counsel for a custody matter but not for this PFA case. **Id.**

We discern no abuse of discretion. Although Tolibov denies that Khankhodjaeva would have suffered prejudice if the trial court had continued the hearing again, this minimizes Khankhodjaeva's additional expense and uncertainty of preparing for a third hearing date as well as the court's interest in a prompt resolution. As Tolibov did not request this continuance until the parties were in court for the second time on this PFA matter, the trial court

did not err in holding the hearing on the date Tolibov had previously requested. Tolibov's first issue fails.

Second, Tolibov challenges the trial court's grant of a final PFA order against him based on the trial court's finding that he abused Khankhodjaeva. Tolibov's claim goes to the sufficiency of the evidence. To review such a claim, this Court considers all evidence from the hearing in a light most favorable to the plaintiff; we determine whether the evidence can sustain the trial court's conclusion by a preponderance of the evidence. *Karch v. Karch*, 885 A.2d 535, 536–37 (Pa. Super. 2005) (citation omitted). We defer to the trial court's findings of whether the witnesses who testified at the hearing were credible. *Id.* at 537.

At a PFA hearing, the plaintiff bears the burden to "prove the allegation of abuse by a preponderance of the evidence." 23 Pa.C.S.A. § 6107(a). Because the primary goal of the PFA Act is "advance prevention of physical and sexual abuse," a trial court does not need to find completed physical injury to enter an order. *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020). Indeed, "abuse" under the PFA Act includes "[p]lacing another in reasonable fear of imminent serious bodily injury." 23 Pa.C.S.A. § 6102(a).[2] Previous instances of a defendant's conduct "are significant" for the trial court to determine whether the plaintiff's fear is reasonable. *E.K.*, 237 A.3d at 519.

---

[2] Abuse under the PFA Act is limited to conduct between people in qualifying relationships. *See* 23 Pa.C.S.A. § 6102(a). Here, it is undisputed that Tolibov and Khankhodjaeva were in a qualifying relationship.

Here, the trial court considered Tolibov's conduct at Khankhodjaeva's house and his prior acts in finding that Khankhodjaeva reasonably feared imminent serious bodily injury:

> In the instant case, the [trial court] found sufficient credible evidence of abuse as defined by the PFA Act. Mother credibly testified to Father's actions on or around March 4, 2023 in which he came to Mother's house in an agitated and angry state, began honking on his car horn, yelling and cursing repeatedly, kicked Mother's front door and ripped Mother's security camera from its place and threw it into the garden. Mother credibly testified that Father threatened to "teach me a lesson" and gestured that he was "going to rape me in my mouth." Mother testified that "I was afraid for my safety" and called the police. She testified that "I am afraid of him" and "I don't feel safe."
>
> The [trial court] determined that Mother's fear of injury at the hands of Father was reasonable. This is, in part, based on Father's prior aggressive and threatening acts. Mother offered credible testimony that Father had "thrown things" at her and her car and generally menaced her in public. More significantly, she offered credible testimony that Father had previously "grabbed me by the neck because he was angry with me" and "he was choking me when I was pregnant..."
>
> Mother's testimony was corroborated by the photograph of Father's footprint on her front door and the two videos during which Father was demonstrably angry and aggressive. Indeed, as the [trial court] noted in rendering its decision, Father presented in court on April 6, 2023 "as very angry."
>
> The [trial court] found Father's testimony, on the other hand, to be wholly incredible. Father's testimony with respect to kicking the door and damaging the security camera was inconsistent and unclear and his blanket denial of alleged past incidents of abuse was unpersuasive. Father's demeanor, captured on the videos and present in open court, corroborated Mother's testimony that she was reasonably fearful of him.

Trial Court Opinion, 6/22/23, at 9–10 (record citations omitted).

The record supports the trial court's determinations. The trial court found Khankhodjaeva to be credible that she was afraid for her safety based on Tolibov's actions and threats at her door on March 4, 2023. This fear was reasonable based on Tolibov's prior incident of choking Khankhodjaeva. Because the evidence was sufficient, the trial court did not err in entering the PFA order against Tolibov. This issue fails.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/14/2023