J-S76027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| DARLENE J. KEEP | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JEFFREY S. KEEP | |
| Appellee | No. 1013 WDA 2014 |

Appeal from the Order June 3, 2014
In the Court of Common Pleas of Erie County
Domestic Relations at No(s): 17070-2014

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and OLSON, J.

MEMORANDUM BY PANELLA, J.             **FILED FEBRUARY 23, 2015**

Appellant, Darlene J. Keep, appeals from the order entered June 3, 2014, in the Court of Common Pleas of Erie County, which denied Keep's petition for a final Protection from Abuse Order brought under the Protection from Abuse Act (the "PFA Act"), 23 Pa.C.S.A. § 6101 *et seq*.  As we have no basis to conclude that the trial court abused its discretion in assessing the credibility of the witnesses before it, we affirm.

On May 15, 2014, Keep ("Wife") filed a PFA Petition against her husband, Appellee, Jeffrey S. Keep ("Husband").  The PFA court entered a temporary PFA order pending a final evidentiary hearing and held a hearing for a final order on May 22, 2014.  At the conclusion of the hearing, the PFA court announced that it found neither party to be very credible, and further, that it did not believe Wife's allegation that Husband had pointed a gun at

her in February of 2014. Thus, the PFA court declined to grant Wife a final PFA order. This timely appeal followed.

On appeal, Wife asserts that the PFA court erred in denying her petition for a final PFA order.

Our standard of review for PFA orders is well settled. "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Boykai v. Young***, 83 A.3d 1043, 1046 (Pa. Super. 2014) (citation and internal quotation marks omitted). We review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevails before the PFA court. ***See Snyder v. Snyder***, 629 A.2d 977 (Pa. Super. 1993). The petitioner need only establish her case by a preponderance of the evidence to be entitled to relief. ***See Custer v. Cochran***, 933 A.2d 1050, 1058 (Pa. Super. 2007).

> Furthermore, we must defer to the credibility determinations of the trial court. Finally, we note that a PFA petitioner is not required to file a police report, nor is it necessary for her to introduce medical evidence of an injury. The petitioner's testimony is sufficient if it is believed by the trial court.

***Id***. (internal citations omitted).

Wife argues that the PFA court erred when it discredited her testimony concerning the allegations of abuse[1] allegedly inflicted by Husband. The PFA court sets forth the following summary of the evidence at the hearing:

---

[1] The PFA Act defines "abuse" as follows:
*(Footnote Continued Next Page)*

The testimony at the PFA hearing revealed the parties are in the middle of a bitter, contentious divorce that has not been resolved because of issues surrounding money and property. Both have problems with alcohol. There was no dispute this was a major contributor to the fighting and arguments between them, including the majority of the four specific incidents Wife claims constitute abuse under the PFA statute.

The first incident took place on January 28, 2014, when the parties still lived together. During an argument Wife testified

*(Footnote Continued)* ———————————

The occurrence of one or more of the following acts *between family or household members,* sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102 (emphasis added).

that Husband threw a bag of chips at her after he hit her.  She suffered no injuries.

A second incident also took place in January.  She said sometime after Husband was convicted of his first DUI offense, police officers came to their house and removed a clip from a handgun belonging to Husband.  The officer then placed the unloaded gun on top of the refrigerator.  According to Wife, the officer intended to hide the gun from Husband.  She said Husband called in the middle of the night to find out where his gun was.  There is no police report mentioning any action by any officer arriving at the house to remove the clip or hide the gun.

The parties still lived together in February, 2014, when the next incident occurred.  Wife testified she woke up with Husband pointing a gun to her head.  He made no threats to her.  There was no evidence produced by either side to show whether the gun was loaded.  Husband was intoxicated, despondent and talking about suicide while on the phone with his sister.  Wife was able to call the police.  While Wife was on the phone with the police, Husband put the gun in a safe, left the house and drove away.  The police apprehended him a few blocks away, arrested him for DUI and transported him to a hospital.

At the time Wife never told police Husband had a gun to her head.  She also admitted on cross-examination she only called the police because he was threatening to kill himself.  She did not believe he would hurt her.

The final event recounted by Wife took place on May 14, 2014, the day before she filed a petition for protection from abuse.  In her petition and in her testimony she claims Husband came to her home uninvited (the parties are now separated) to pick up some belongings he left behind.  She would not let him in but said she would retrieve the items for him.  Ignoring her, he pushed his way into the home.  The two began arguing.  Husband then went to get a laptop.  Wife would not give it to him.  They struggled over it.  Wife claims during the struggle Husband pushed her.  In the process she said she received bruises on her arm and stomach.  She was then able to leave the room and call her attorney.  She did not call the police.

To corroborate some of her allegations, Wife called her friend, Michelle Kutterna, to testify.  While the witness never saw any

physical acts of abuse committed by Husband against Wife, she testified she saw bruises on Wife's body, that Wife came to her home often after fights between Wife and Husband, and that Wife was scared, though the witness could not elaborate or provided further details why she was afraid or what Husband might have done to make Wife afraid of him. She also confirmed Wife's testimony about the incident in January when a police officer came to the home and removed a clip from a gun.

At the close of Wife's case, Husband testified, primarily denying or explaining the allegations against him. Of significance to the court was his admission during his testimony about the February 2014 incident. He said he was in close proximity to a handgun while intoxicated and threatened suicide shortly before leaving his home where police arrested him for his second DUI. He denied pointing the gun to Wife's head or threatening her with it. Other key points of his testimony concern his admitted alcohol addiction, and prior PFAs entered against him by persons other than his Wife. Both PFAs were consent orders and entered more than five years ago. One was in effect for three years, the second for one year. There was no evidence Husband violated those orders.

Following Husband's testimony, his sister was called to recount her recollection of the February 2014 gun/second DUI occurrence. Other than to confirm her brother's mental state, her testimony was not helpful to the court because she was vague and uncertain on important details, in particular whether her brother was intoxicated at the time.

In addition, Husband's sister testified about an incident on January 18, 2014 and attempted to elicit reputation evidence against Wife. The January 18 testimony was not given great weight primarily because much of it was based on what she heard over the phone; the reputation evidence was given no weight at all since it was improperly introduced in the from of an opinion, contrary to the PA Rules of Evidence.

Trial Court Opinion, 8/5/14, at 3-6 (footnotes and citations omitted). This summary of the testimony at the hearing is supported by the certified record on appeal.

The PFA court found that Wife's claim about Husband pointing a gun at her in February was not credible. *See id*., at 8. Furthermore, the PFA court found that it was not convinced by a preponderance of the evidence that Wife's allegations regarding the other incidents were true. *See id*., at 8-9. Finally, the PFA court found that, based upon "the demeanor of Wife …, the inference is strong that her motivation to file petition was not because she needed protection from spousal abuse, but because she somehow believes a PFA order puts her in a stronger bargaining position vis-à-vis a divorce settlement." *Id*., at 9.

"Credibility determinations are crucial components to any trial proceeding." *Ferko-Fox v. Fox*, 68 A.3d 917, 924 (Pa. Super. 2013). "The trial court's ability to view the petitioner's facial expressions and mannerisms during the … hearing is critical to an ability to render its credibility determinations." *Id*. Instantly, the PFA court did not credit Wife's testimony that Husband had held a gun to her head. Furthermore, the PFA court did not fully credit Wife's version of the events regarding the other three incidents that formed the basis of her petition. "This court defers to the credibility determinations of the trial court as to witnesses who appeared before it." *Karch v. Karch*, 885 A.2d 535, 537 (Pa. Super. 2005) (citation omitted). As the PFA court discredited Wife's testimony, and the transcript otherwise supports the PFA court's factual findings, we affirm the order denying Wife's petition for a final PFA order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2015