J-S18033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| ESTEFANIA PERDOMO-CALERO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JACOB LEE ALTIF | |
| Appellant | No. 2273 EDA 2016 |

Appeal from the Order Entered June 22, 2016
in the Court of Common Pleas of Northampton County Civil Division
at No(s): C0048PF2016-000405

BEFORE: PANELLA, SOLANO, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:            **FILED NOVEMBER 30, 2017**

Appellant, Jacob Lee Altif, appeals from the order of the Northampton County Court of Common Pleas granting the petition for a Protection From Abuse[1] ("PFA") order filed by Estefania Perdomo-Calero ("Complainant"). Appellant contends that the trial court erred in denying his request for a continuance of the PFA hearing and that the evidence was insufficient to support the issuance of the PFA order. We affirm.

Complainant and Appellant were in a romantic relationship from October 2014 to April 2016, when Complainant ended the relationship. N.T., PFA Hr'g, 6/22/16, at 3. On May 25 and May 26, 2016, Complainant visited Appellant's apartment after his recent hospital stay. *Id.* at 4-5. On May 26, 2016, Appellant asked Complainant why she left him and then approached her to

---

[*] Former Justice specially assigned to the Superior Court.

[1] ***See*** Protection From Abuse Act, 23 Pa.C.S. §§ 6101-6122.

give her a hug. *Id.* at 5. Complainant testified that Appellant squeezed her so hard that she was not able to breathe correctly. *Id.* When Complainant attempted to leave, Appellant blocked the front door. *Id.* Complainant grabbed Appellant's face and shook it. *Id.* Appellant told her to leave through the backdoor. *Id.* at 6. Appellant, however, then ran to the backdoor and attempted to block the backdoor, told Complainant that she scratched his face, and stated that he would call the police. *Id.* Complainant exited through the backdoor and went to a neighbor's apartment. *Id.* The police responded, but took no action that night. *Id.* The following day, May 27, 2016, Appellant appeared at Complainant's workplace. *Id.* at 7. According to Complainant, Appellant was trying to "emotionally harass" her and then asked her for the keys to his apartment and his motorcycle. *Id.*

On May 27, 2016, Complainant filed a PFA petition, and an emergency order was issued that same day.[2] The trial court scheduled a hearing for June 10, 2016 but continued the hearing to June 22, 2016 when Appellant requested a continuance to obtain counsel.

On June 22, Appellant appeared *pro se* for the PFA hearing. When Complainant concluded her testimony, Appellant requested a continuance to obtain counsel (the same request that he had made on June 10, 2016). Appellant stated:

---

[2] Appellant also filed a PFA against Complainant, which the trial court denied. Appellant's PFA petition is not included in the certified record in this appeal.

> I was actually wondering if there is any way for me to get a continuance because [Complainant] was coercing me and her father-figure—
>
> ***
>
> She has a father-figure, and they were calling me on the phone, and she called me twice yesterday. And they were both telling me that I need to drop this, I need to let it get done and over with, the PFA thing, or I'm going to get in trouble and all that. I got a continuance for a lawyer, and I didn't bring the lawyer with me because they told me that she wasn't coming.

N.T. at 10-11. The trial court responded "that's a mistake" and directed Appellant to testify, thereby denying his second continuance request. *Id.* Appellant testified that Complainant assaulted him during the incident in his apartment and took the keys to his motorcycle, and he visited her office the next day to retrieve the keys. *Id.* at 16.

At the conclusion of the hearing, the trial court granted Complainant a three-year PFA order against Appellant. *Id.* at 18. Appellant timely filed a notice of appeal and a Pa.R.A.P. 1925(b) statement challenging (1) the court's denial of his request for a continuance at the June 22, 2016 hearing and (2) the sufficiency of the evidence. The trial court issued a Pa.R.A.P. 1925(a) opinion addressing the latter claim, *see* Trial Ct. Op., 8/17/16, at 1-5, but did not address its denial of Appellant's request for a second continuance.

On May 22, 2017, we remanded this case to the trial court for preparation of a supplemental opinion on the continuance issue. On June 27, 2017, the trial court filed a supplemental opinion concerning this issue.

Appellant presents the following questions for review:

A. Whether [the] [t]rial [c]ourt committed reversible error denying Appel[l]ant's request for a continuance of the [PFA] hearing?

B. Whether [the] [t]rial [c]ourt committed reversible error in granting a Final Order for [PFA] for . . . [Complainant]?

Appellant's Brief at 1.

Appellant first argues that the trial court erred by denying his request

for a continuance on June 22, 2016.

Pursuant to § 6107(c), trial courts have discretion to continue evidentiary hearings regarding final PFA orders and enter appropriate temporary *ex parte* orders to cover the intervening time. **See** 23 Pa.C.S. § 6107(c) ("If a hearing under subsection (a) [relating to evidentiary hearing on final PFA order] is continued and no temporary order is issued, the court may make ex parte temporary orders under subsection (b) as it deems necessary").

**Ferko-Fox v. Fox**, 68 A.3d 917, 926 (Pa. Super. 2013). Thus, we review the

denial of a request for a continuance for an abuse of discretion. **Id.**

The trial court reasoned as follows in its supplemental opinion:

[T]his was in fact . . . Appellant's second request for a continuance to again give him the opportunity to get a lawyer. His first was timely and properly submitted to the Court the day before the originally schedule[d] hearing. It was granted and the opposing party was . . . timely notified of the continuance, so that no[body was] inconvenienced. However, . . . Appellant's request for a second continuance was brought orally, in the middle of the PFA hearing, after hearing the testimony of the victim.

We also had the benefit of both parties['] description of their communication the day before the hearing regarding a possible resolution of their dispute. Both noted that their settlement discussions were unsuccessful. Both parties

then appeared for the hearing on June 22, 2016 without counsel . . . [W]e found that the justification advanced by Appellant for the untimely second continuance made no sense. Appellant argued that his decision not to bring his lawyer was made after the previous day's communication with [Complainant] and her father-figure[,] who allegedly told Appellant "that I needed to drop this, I need to let it get done and over with, the PFA thing, or I'm going to get in trouble and all that." . . . [A]ppellant's next statement was **"I got a continuance for a lawyer, and I didn't bring the lawyer with me today because they told me she wasn't coming."** As we understand his assertion, Appellant was claiming that [Complainant] threatened (or perhaps attempted to intimidate him) to drop his PFA by telling him he would "get in trouble" if he advanced his claims and then she lulled him into believing that "she wasn't coming." Yet, he came for his hearing without his lawyer and [then], after hearing her testimony, he . . . wanted a second continuance.

Clearly, Appellant was on notice that the PFA was not settled. In fact, according to Appellant's testimony, [Complainant] continued to be antagonistic towards him. Then, based on their antagonistic conversation the day prior to the hearing, Appellant decided not to bring a lawyer, because he didn't think she would show up. It sounded like gibberish—a nonsensical excuse, made up on the spur of the moment . . . .

Frankly, we [viewed] the untimely second request for a continuance to be a delay tactic, perhaps advanced by . . . Appellant who may have ultimately realized after hearing the testimony of [Complainant], that this was now a serious legal proceeding.

Trial Ct. Op., 6/27/17, at 3-5 (emphasis in original).

We conclude that the trial court acted within its discretion in denying Appellant's second request for a continuance. His first request for a continuance, which the trial court granted, was allegedly for the purpose of obtaining counsel. Nevertheless, Appellant appeared *pro se* at the second

hearing and only requested a second continuance in the middle of the hearing, following Appellant's testimony. The trial court was well within its discretion in finding Appellant's rationale for a second continuance to be "gibberish" and devoid of credibility.

Appellant next argues that the evidence was insufficient to support the PFA order. We disagree.

"When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999) (citation omitted). This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it. *Id.* Furthermore, "the preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004).

The PFA Act defines "abuse" as follows:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault,

statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S. § 6102(a)(1), (2). Actual physical harm is not a prerequisite for a PFA order; the victim need only be in reasonable fear of imminent serious bodily injury. *Fonner*, 731 A.2d at 163.

The trial court found Complainant's testimony credible and Appellant's testimony not credible. Trial Ct. Op., 8/17/16, at 4. It continued:

> [A]lthough this was not a serious incident by way of a violent physical interaction, [Complainant] established by a preponderance of the evidence that [Appellant] placed [her] in reasonable fear of imminent serious bodily injury by squeezing her such that she feared that she could not breathe and then blocking her access when she tried to leave the apartment, both at the front door and at the back door. Further, the actions by [Appellant] established that . . . [Complainant] was menaced and blocked from leaving his apartment such that she was in fear that she was being falsely imprisoned. Then, the next day he showed up unannounced, wanted to continue to discuss their relationship, and harassed her at her office. Frankly, his testimony also concerned us with regard to his fixation on . . . [Complainant] and his intent to force reconciliation with his ex-girlfriend.
>
> We believe that the prevention of future physical contact and further threatening and harassing conduct by [Appellant] towards . . . [Complainant] required the entry of a PFA Order to assure . . . her safety.

*Id.*

We must defer to the trial court's decision that Complainant was credible. *See Fonner*, 731 A.2d at 161. Viewed in this light, we agree that

- 7 -

the evidence was sufficient to demonstrate, by a preponderance of the evidence, that Appellant's conduct placed Complainant in reasonable fear of imminent serious bodily injury. Thus, the evidence was sufficient to support the PFA order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2017