J-A02005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RHONDA GERACIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LIONEL BROWN | : | No. 755 WDA 2020 |

Appeal from the Order Entered June 19, 2020
In the Court of Common Pleas of Blair County Civil Division at No(s):
2020 GN 1263

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED:  April 16, 2021**

Rhonda Geracia ("Wife") appeals from the June 19, 2020 order dismissing her petition pursuant to the Protection from Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101-6122, against Lionel Brown ("Husband").  After review, we reverse and remand.

Wife filed a petition for a temporary emergency PFA on June 3, 2020. At that time, the parties were married but separated, a divorce action had been filed, and they had known each other for just over one year.  N.T., 6/19/20, at 5.  The temporary PFA issued that day, and a hearing was scheduled on the permanent PFA.  Order, June 2, 2020.

The following evidence was produced at the June 19, 2020 video-conferenced PFA hearing.  On June 2, 2020, Wife and her three-year-old child were at a friend's home on Lexington Avenue when Husband pulled up in his vehicle.  He started shouting "this is mine, this is all mine, this is in my name."

N.T., 6/19/20, at 6. As she approached his car, he started pounding on it, yelling "this is my car." *Id*. He sped off but circled two or three more times. She testified that this was the first time she was scared of him and did not want him to hurt her or her child. *Id*.

Wife described an incident that occurred approximately two weeks earlier, on May 18 or 19, 2020, at about 9:00 or 9:30 p.m. As she was getting into the driver's seat of her truck, Husband came to the passenger window and started screaming at her and pounding on the window. The window shattered, causing glass to fly all over her and her child. *Id*. at 7. Wife was bleeding and her young daughter was screaming. She testified she was very scared at the time and unsure of what Husband was going to do next. *Id*. at 8.

Prior to that incident, on May 8, 2020, Husband physically charged at Wife and her daughter following an argument. They took refuge in the bedroom and he departed. When Wife exited the bedroom hours later, however, he was lying on the couch. She offered that Husband would sneak in and hide, just to catch her in something he thought she was doing. She returned to the bedroom and he texted her phone all night. When she was preparing to leave the next morning, Husband was ripping the stereo out of her car.

The foregoing three incidents in May and June 2020 were not Wife's first or only confrontations with Husband. Wife testified that, two months into the relationship, she asked to leave after he threw a tire at her and her daughter.

She reported that, a couple of days later, he punched the passenger-side mirror of her car because he was angry that she would not come outside and speak to him. *Id*. at 9. She told the court that she had been in domestic abuse situations before, and that while Husband had not put his hands upon her physically, she knew that it would happen, and she was scared.

Wife offered documentary evidence that, despite the issuance of the temporary PFA on June 3, 2020, Husband texted her on June 6, 2020, at 4:39 a.m. *See* Plaintiff's Exhibit 1. Although he had not bothered her since then, she testified that she remained scared of him and did not want him near her or her child. Based on her experience, she knew "what will happen next" and she was not going to allow that to happen. *Id*. at 17.

Husband countered that there was no June 6, 2020 text to Wife on his phone. He offered copies of several text messages from Wife that were sent after his initial June 6, 2020, 4:39 a.m. text. *See* Defendant's Exhibit 1. Husband testified that he never placed his hands on Wife. He accused her of threatening and hitting him, and denied that he had never done anything to hurt her. *Id*. at 19-20. He insisted that he never threw a tire at Wife; rather, it was a tire rim. *Id*. at 21. In his next breath, he denied throwing anything at Wife or her daughter. *Id*. Husband admitted that he broke the window of the truck, but seemingly justified his conduct by pointing out that the truck was in both of their names. *Id*. at 27-28.

At the conclusion of the hearing, the trial court stated, "this is a volatile situation" and expressed understanding as to why [Wife] would want to keep

[Husband] away from her. *Id*. at 33. However, even though it believed that Wife had presented a good faith case, the trial court did not find sufficient evidence of abuse under the Act, and, therefore, dismissed the petition. *Id*. The trial court later explained that "while the behavior of the [Husband] is not to be condoned, this Court simply finds insufficient credible evidence that [Wife's] pursuit of a protection from abuse order in this matter was based on a reasonable fear of bodily injury." Trial Court Opinion, 8/18/20, at 5.

Wife timely appealed. Both she and the trial court complied with Pa.R.A.P. 1925, and the matter is ripe for our review. Wife presents two issues:

> a. Whether the Trial Court made an error of law when it failed to properly apply the Protection from Abuse Act, 23 Pa.C.S.A. § 6101 *et.seq*., definitions of abuse to the facts of the instant case?
>
> b. Whether the Trial Court made an error of law when it failed to apply the proper burden, [p]reponderance of the [e]vidence, to the facts of the instant case?

Appellant's brief at 4.[1]

In reviewing a PFA order, we "review the trial court's legal conclusions for an error of law or abuse of discretion." *K.B. v. Tinsley*, 208 A.3d 123, 127 (Pa.Super. 2019) (citation omitted). "[W]e must defer to the credibility determinations of the [PFA] court." *Custer v. Cochran*, 933 A.2d 1050, 1058 (Pa.Super. 2007). *Id*.

---

[1] Husband did not file a brief.

- 4 -

In ***E.K. v. J.R.A.***, 237 A.3d 509 (Pa.Super. 2020), this Court reaffirmed that, "[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***Id***. quoting ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa.Super. 2008). To that end, the objective is to determine whether the victim is in reasonable fear of bodily injury. ***See Raker v. Raker***, 847 A.2d 720, 725 (Pa.Super. 2004). Past acts play a significant role in making such a determination. ***See E.K. supra*** at 519 (citing ***Raker***, ***supra*** at 725). Notably, the intent of the alleged abuser is not relevant to our determination. ***See Buchhalter***, ***supra*** at 1263.

The PFA Act defines "abuse," in relevant part, as follows:

"Abuse." The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

. . . .

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

- 5 -

23 Pa.C.S. § 6102(a).

Wife points out that although the trial court found her testimony credible, it found the evidence "insufficient to prove that the incidents rose to the level of abuse as defined in the [Act]." Appellant's brief at 12-13. She contends that this was error, and that she provided evidence that met the definition of abuse as interpreted in Pennsylvania jurisprudence. Wife maintains that she established that "[Husband] engaged in a series of frightening and violent incidents throughout the relationship, abusing [Wife]," and specifically, the May and June 2020 incidents were sufficient to meet the definition of abuse set forth in 23 Pa.C.S. § 6102(a). *Id*. at 14. She points to the instance when Husband charged at her and her daughter, and they took refuge for hours in the bedroom. *Id*. In addition, on either May 18 or 19, 2020, Husband smashed her passenger side window, shattering glass all over her and her child. She contends this act alone was sufficient to meet the burden of proving that [Husband] was "attempting to cause bodily injury." *Id*. at 15. Finally, she contends that the June 2, 2020 incident, when she had left and [Husband] stalked her, yelled at her, and repeatedly circled the block in his car, was sufficient to establish her reasonable fear when viewed in light of the prior history of violence. *Id*.

It is well-settled that the evidentiary burden on plaintiffs requesting protection under the Act is low: "the preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the

criteria or requirement for preponderance of the evidence." ***Raker***, ***supra***, at 724. Viewing the evidence in the light most favorable to Husband, who prevailed below, we find that Wife met that burden and established abuse as defined under the Act. Wife described three recent incidents that she testified placed her in fear of imminent bodily injury. In addition, there were prior acts on the part of Husband that we view as significant in determining the reasonableness of Wife's fear. ***See K.B.***, ***supra*** at 128 (past acts relevant in determining reasonableness of fear). Husband engaged in physically threatening conduct toward Wife, as well as harassing and stalking behavior.

The trial court believed Wife's account of the incidents, found that she pursued the PFA "in good faith," but was unable to determine whether Husband's actions "placed [Wife] in reasonable fear of bodily injury or in fear of imminent bodily injury" or whether these actions were "simply the product of a relationship which included verbal conflict and outbursts." Trial Court Opinion, 8/17/20, at 4. The court found "insufficient credible evidence that [Wife's] pursuit of a protection from abuse order in this matter was based on a reasonable fear of bodily injury." ***Id***. at 5.

Wife bore the burden of proving abuse by a preponderance of the evidence. In order to do so, she had to establish at a minimum that Husband attempted to cause her bodily injury, or placed her in reasonable fear of imminent serious bodily injury, or that he knowingly engaged in a course of conduct or repeatedly committed acts toward her under circumstances which

placed her in reasonable fear of bodily injury. The conduct herein went far beyond verbal conflict and outbursts. Throwing a tire or tire rim at someone and physically charging at a person are acts calculated to cause bodily injury or fear of bodily injury. Shattering a car window with one's fist, spraying glass over the occupants, is physically threatening behavior that would tend to place one in reasonable fear of imminent serious bodily injury. Against this backdrop, Husband's stalking and harassing conduct on June 2, 2020, understandably placed Wife in reasonable fear of bodily injury.

We recognize that the Act is intended to prevent physical and sexual abuse, but such abuse does not have to occur before the Act will apply. *Id*. at 1264. *See Burke ex rel. Burke v. Bauman*, 814 A.2d 206 (Pa.Super. 2008) (holding it is possible for a person to be placed in reasonable fear of imminent bodily injury based upon telephone calls, especially with a history of physical abuse); *Ferko-Fox v. Fox*, 68 A.3d 917 (Pa.Super. 2013) (wife's fear of husband stemmed from previous instances of husband's physical abuse). Based on the record before us, and giving deference to the trial court's credibility determinations, we find that Wife established abuse by a preponderance of the evidence. While the trial court speculated that the motivation for Wife's PFA petition was to limit contact with Husband rather than based on reasonable fear of bodily injury, we do not find those motivations to be mutually exclusive. On June 2, 2020, Wife was not living with Husband because "the last time scared me enough to leave and be done

- 8 -

with it." N.T., 6/19/20, at 7. She testified she did not want him to hurt her or her child "because I know what's going to be next he just busted a glass window all over me and my child saw it and I'm scared of him." **Id**. She stated she had been in domestic abuse situations before, and although Husband had not put his hands on her physically, "I know that will happen, I know it will." **Id**. at 9. Wife expressed reasonable fear that the abusive situation with Husband was escalating.

Based upon a careful review of the record and the relevant law, we hold that Wife proved her allegation of abuse by a preponderance of the evidence. Accordingly, we reverse the order denying PFA relief, and remand for entry of an appropriate order granting such relief.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/2021