J-A26001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GIULIANO MARIA TOREATTO ON BEHALF OF S.T. AND J.T. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ELIZABETH DECORDOVA | : | |
| | : | No. 1267 EDA 2021 |
| Appellant | | |

Appeal from the Order Entered May 24, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2021-01948

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 13, 2021**

Elizabeth DeCordova ("Mother") appeals from the May 24, 2021 order granting a final order pursuant to the Protection From Abuse ("PFA") Act, prohibiting her from having any contact outside of a therapy-based setting with her teenage daughters S.T. and J.T. for a six-month period.[1]  We affirm.

---

[1] While this appeal became technically moot upon the expiration of the PFA on November 24, 2021, we have held that the typically-short duration of such orders places them within the exception to mootness doctrine for questions capable of repetition but evading review.  ***See***, ***e.g.***, ***Ferko-Fox v. Fox***, 68 A.3d 917, 920-21 (Pa.Super. 2013).

Viewing the certified record in the light most favorable to the prevailing party, we glean the following history of this case.[2]  S.T. and J.T. were born in 2003 and 2005, respectively.  Mother and Giuliano Maria Toreatto ("Father") were engaged in contentious divorce and custody litigation during the period at issue in this appeal.  On the date in question, Father remained in the marital residence with S.T. and J.T. while Mother resided elsewhere.  On February 18, 2021, S.T. and J.T. exchanged text messages with Mother in anticipation of her appearance at the family's home the following day.  **See** N.T. PFA Hearing, 5/24/21, at 22, 45.  They pleaded with Mother not to come to the house because they were "scared what might happen if she did." **Id**.  Specifically, Mother had a history of "violent incidents" that included hitting, kicking, punching, and scratching her children or throwing things, such as a stapler, at them or Father.  **Id**. at 22-24, 27, 43-45.  She had also threatened to hit

---

[2] Mother's statement of the case is rife with argument, in direct violation of Pa.R.A.P. 2217(b) ("The statement of the case shall not contain any argument. It is the responsibility of appellant to present in the statement of the case a balanced presentation of the history of the proceedings and the respective contentions of the parties.").  The statement further includes factual averments that lack "an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found" as required by Pa.R.A.P. 2117(a)(4), and which appear to be outside the scope of this PFA action.  Accordingly, we give no consideration to Mother's statement of the case in adjudicating this appeal.  **See** Pa.R.A.P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed[.]").

Father in the head with a heavy bat to "put him out of his misery forever."[3] *Id*. at 50. S.T. in particular had experienced Mother's wrath such that "overall [S.T.] was really very, very scared." *Id*. at 23. The girls were particularly "uncomfortable" with Mother coming to the house that day, as she was bringing a locksmith to change the locks on the house upon the belief that the key she had no longer worked. *Id*. at 25. The girls requested an opportunity to talk to their therapist before spending time with Mother. *Id*. at 21-22.

Despite these requests, Mother opted to exercise her custody rights in the home the following day. In an attempt to diffuse the situation by showing Mother that her key was still useful, and in the hopes that Mother would not engage in the same type of violent behavior out in public that she had displayed in the privacy of the home, S.T. and J.T. met Mother outside when she arrived on February 19, 2021. *Id*. at 25, 42. Despite their efforts, "it got really bad." *Id*. at 25. Mother pushed J.T. to the ground, hurting her ankle badly, and said, "Oh, [J.T.], stop being a drama queen." *Id*. at 42, 113-14. Mother then pushed S.T. up against the door, kicked, punched, slapped, and scratched her, causing bruising, and stopped only when the locksmith arrived. *Id*. at 25, 42.

Whitemarsh Township Police came to the scene twice. After the officers made peace initially, Mother left at their suggestion. *Id*. at 70-71. Corporal

---

[3] This incident with Father was the subject of a prior PFA petition. *See* N.T. PFA Hearing, 5/24/21 at 50.

Michael Burton, who spoke to the girls inside the house, provided them with statement forms, which they never returned, and also advised them that they could pursue another PFA petition, as he was aware a prior one had been filed. *Id*. at 75. Corporal Burton got the impression that the girls "did not want their mother to be charged at that point. They just wanted everything to be calm from there." *Id*. at 70. Mother came back and tried to enter the home through the side door, but again left at the suggestion of the police. *Id*. at 39, 76.

On February 22, 2022, Father filed a PFA petition on behalf of S.T. and J.T. The trial court entered a temporary PFA, appointed a child advocate, and scheduled a hearing on a final PFA order. After the scheduled hearing was continued several times at the request of the parties, the court ultimately held a hearing on May 24, 2021. The court heard testimony from S.T. and J.T. in support of the petition, and, in defense, Mother offered her own testimony along with that of Corporal Burton and Mother's cousin, with whom she had been on the phone during the incident and who overheard Mother make the "don't be a drama queen" comment. Throughout the hearing, the trial court sought to focus the testimony on the events of February 19, 2021, rather than delve into the custody litigation. *See*, *e.g.*, *id*. at 10 (sustaining objection by Mother to a question concerning the length of time since Mother last visited with S.T. and J.T.); *id*. at 41-42 (sustaining Mother's objection to disclosure of the family counseling recommendations in place at the time of the incident).

Mother took the position that the girls had fabricated or embellished the events of February 19, 2021, because Father had poisoned the girls against her and concocted a scheme for the girls to pick a fight with Mother to support a second PFA petition. Mother argued that the girls could not have actually been afraid of her, because they would have remained in the house rather than come out to confront her if they truly were in fear of her. Mother further disputed that the testimony established any abuse occurred. *See id*. at 127-28.

The trial court, however, credited the testimony of S.T. and J.T. and entered a final PFA order. For a period of six months, Mother was ordered not to "abuse, harass, stalk, threaten, or attempt or threaten to use physical force against" S.T. and J.T., and not to contact them by any means, except "with a reunification therapist, if in [a] therapy based setting." *Id*. at 136.

Mother filed a timely notice of appeal. Mother also filed a contemporaneous statement of errors complained of on appeal, which included the issues she presents for this Court's review:

1.   Whether the trial court committed an error of law and fact in issuing a Final Protection from Abuse Order where no credible evidence of abuse as defined under 23 Pa.C.S. § 6102 was presented by Appellee/Father and the parties' teenage daughters.

2.   Whether the trial court committed an error of law and fact in entering a Final Protection from Abuse Order where no credibl[e] evidence was presented that either teenage daughter sustained bodily injury as defined by 18 Pa.C.S.A. § 2301.

3. Whether the trial court committed an error of law and fact and abused its discretion in entering a Final Protection from Abuse Order where undisputed evidence showed Appellees/teenage daughters were not afraid of Appellant/Mother as they purposefully waited for Appellant/Mother at the front door, stood side by side, and intentionally blocked her from entering her own home thereby demonstrating that they did not fear Appellant/Mother.

4. Whether the trial court committed an error of law and abused its discretion by prohibiting Appellant/Mother from presenting evidence about the relevant history between the parties which led up to and played a pivotal role in the events of the day in question.

Mother's brief at 10-11.

We begin with a review of the pertinent legal principles. "Our standard of review for PFA orders is well settled. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020) (cleaned up). An abuse is not "a mere error in judgment; rather, an abuse of discretion occurs where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." *Kaur v. Singh*, 259 A.3d 505, 509 (Pa.Super. 2021)

In the PFA context, "[a]ssessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *S.G. v. R.G.*, 233 A.3d 903, 907 (Pa.Super. 2020) (cleaned up). "[T]he trier of fact while passing upon the credibility of

witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Kaur*, *supra* at 509 (cleaned up). As such, "we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court." *Id*.

It is well-settled that "the purpose of the PFA act is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring." *Diaz v. Nabiyev*, 235 A.3d 1270, 1272 (Pa.Super. 2020) (cleaned up). To prevail, a PFA petitioner must prove by a preponderance of the evidence that abuse contemplated by the Act occurred. *See*, *e.g.*, *K.B. v. Tinsley*, 208 A.3d 123, 128 (Pa.Super. 2019) ("A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence."). The petitioner need not present corroborating evidence of the alleged abuse of resultant injuries, rather "[a] PFA petitioner's testimony alone, if believed by the trial court, may constitute sufficient evidence of abuse." *E.K. v. J.R.A.*, *supra* at 523.

The Act defines abuse, in relevant part, as follows:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

. . . .

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

23 Pa.C.S. § 6102(a). The term "child abuse" as defined in Chapter 63 specifically includes intentionally, knowingly, or recklessly "[k]icking, biting, throwing, burning, stabbing or cutting a child in a manner that endangers the child." 23 Pa.C.S. § 6303(b.1)(8)(i).

We now consider the case *sub judice*, mindful of the above legal principles. The trial court granted the PFA order upon finding both that Mother attempted to cause or did cause bodily injury and that S.T. and J.T. were in reasonable fear of imminent bodily injury. *See* Trial Court Opinion, 8/5/21, at 5. In her first three issues, Mother challenges the sufficiency of the evidence to establish that abuse occurred. Specifically, she contends that none of the injuries suffered by her daughters as the result of her mere "attempt to get to the door" was serious enough to constitute bodily injury, as there was no testimony of crying or other indication of "substantial pain" as a result of the incident. *See* Mother's brief at 30-31. Mother also maintains that her daughters' claims to have been in fear of imminent bodily injury are belied by the fact that they chose to confront Mother "rather than wait inside in the safety of the home for the police to arrive[.]" *Id*. at 31. Further, Mother asserts, the claims to have been afraid of Mother were not supported by any prior reports of abuse or expressions of "fear to any neighbor, friend, teacher,

police officer, or anyone else prior to" the summer of 2020. *Id*. at 38. Finally, Mother claims that she "did not possess the requisite intent required to sustain a [PFA] order." *Id*. at 26 (unnecessary capitalization omitted).

None of Mother's arguments merits relief. First, the testimony of the victims, believed by the fact finder, is in and of itself sufficient to support the entry of a PFA without any offer of corroborating evidence. *See E.K. v. J.R.A.*, *supra* at 523. *See also Karch v. Karch*, 885 A.2d 535, 538 (Pa.Super. 2005) ("It is well settled that neither the PFA Act nor caselaw requires that a police report be filed in order to obtain a PFA."). Second, when a defendant intends the actions that she has taken, her subjective intent as to the result of those actions is irrelevant. *See K.B. v. Tinsley*, *supra* at 128 ("The intent of the alleged abuser is of no moment."). Third, from the language of the PFA statute quoted *supra*, is clear that proof of actual bodily injury is not required to obtain relief pursuant to the Act. A PFA order may be entered where there is an unsuccessful **attempt** to cause bodily injury, or a reasonable fear that serious bodily injury is imminent. *See* 23 Pa.C.S. § 6102(a)(1), (2). As this Court has observed: "Because the goal of the PFA Act is to prevent physical and sexual abuse, a victim does not have to wait for physical or sexual abuse to occur for the PFA Act to apply, and past acts are relevant to determine the reasonableness of the petitioner's current fear." *E.K. v. J.R.A.*, *supra* at 522.

Finally, where the trial court's factual findings are supported by the record, this Court will not disturb them based upon attacks to the court's

credibility determinations or weighing of the evidence. *See*, *e.g.*, *S.G. v. R.G.*, *supra* at 907. Here, as detailed above, both S.T. and J.T. testified to Mother's past acts of violence against them and Father, and Mother's intentional acts on February 19, 2021 of shoving, punching, slapping, and/or kicking them out in public for the world to see. The trial court acted well within its province in determining that these acts amounted to at least an attempt by Mother to cause bodily injury to her daughters, and that S.T. and J.T. had reasonable fear that Mother would inflict serious bodily injury upon them if a PFA order were not entered to prevent her of having contact with them behind closed doors.[4] Accordingly, we hold that Mother's challenges to the sufficiency of the evidence fail.

In her last claim of error, Mother contends that the trial court erred in prohibiting Mother "from testifying about the relevant history between the parties which led up to and played a pivotal role in the events of the day in question." Mother's brief at 39 (capitalization omitted). Without pointing to any particular question or ruling by the trial court at the PFA hearing, Mother contends that the court "refused to allow" and "failed to consider" testimony concerning the history between Mother and Father. *Id*. at 40. Mother indicates that such evidence "would have shed light on [her] state of mind

---

[4] Indeed, Mother's persistent, overriding argument that her daughters' choice to face her in public rather than in the privacy of the home, where her violence would face less constraint, defies common sense and conventional wisdom.

when she arrived at the Marital Residence with a locksmith and 'why' [Father] and the daughters were adamant that she not gain access to the home." *Id*. Mother maintains that the evidence would demonstrate that "Father has been on a quest to villainize, manipulate, and alienate her teenage daughters from her." *Id*. at 42.

In considering Mother's arguments, we note that the admissibility of evidence at the PFA hearing is left to the sound discretion of the trial court and "may be reversed on appeal only when a clear abuse of discretion was present." *Diaz*, *supra* at 1273 (cleaned up). From our review of the transcript, we find no such abuse of discretion.

As noted above, it was Mother's objections to questions concerning background information that initially caused the trial court to instruct counsel for S.T. and J.T. to limit evidence about the parties' custody litigation. *See*, *e.g.*, N.T. PFA Hearing, 5/24/21, at 10 (sustaining objection by Mother to a question concerning the length of time since Mother last visited with S.T. and J.T.). When Mother then sought to discuss her lack of access to her daughters prior to the incident, counsel for S.T. and J.T. objected and reminded the court of its prior circumscription of the evidence. The trial court nonetheless indicated that it would allow Mother to offer testimony about the background, noting that doing so could lead to cross-examination about why Mother had not seen the girls. *Id*. at 79-80 (trial court ruling that, if Mother's counsel wanted to ask background questions, it could open the door to questions about

Mother's attendance at reunification therapy, and stating "I don't know if you want to keep asking questions about . . . the custody case"). Mother's counsel then voluntarily opted to skip ahead to the events of February 19, 2021, rather than present background evidence that could lead to damaging evidence coming to light under cross-examination. As such, Mother's claim of evidentiary error is based upon a false representation of the trial court's ruling. No relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2021