J-S09045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LAKRESHA JOHNSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN KING | : | |
| | : | |
| Appellant | : | No. 2267 EDA 2023 |

Appeal from the Order Entered July 25, 2023
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-PF-2023-00352

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED JUNE 20, 2024**

Appellant, Johnathan King ("King"), appeals pro se from the order entered July 25, 2023, by the Northampton County Court of Common Pleas ("trial court") granting the petition filed by his former intimate partner, Lakresha Johnson ("Johnson"), pursuant to the Protection From Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101-6122.[1]  Finding no abuse of discretion or error of law by the trial court, we affirm.

_____

[1]  King filed one notice of appeal indicating he was appealing from two separate orders:  (1) the trial court's July 25, 2023 final PFA order and (2) the trial court's August 4, 2023 order, which denied his motions for reconsideration, dismissal, and recusal.  *See* Notice of Appeal, 8/23/2023.  "Generally, when a party seeks to appeal from two separate decisions entered on the same docket, the party must file two separate notices of appeal."  *In re Adoption of A.M.W.*, 289 A.3d 109, 111 n.1 (Pa. Super. 2023) (citation omitted).  However, King's appeal does not lie from the August 4, 2023 order denying his motion for reconsideration.  *See* Pa.R.Civ.P. 1901.7(b) Note, 1930.2(b);
*(Footnote Continued Next Page)*

The record reflects that on April 21, 2023, Johnson filed a PFA petition against King. At that time, Johnson was engaged to Jacob Stettler ("Stettler"). The petition alleged that King posted an old photograph of Johnson on Stettler's vehicle, had a prior physical altercation with Johnson, and had a history of showing up at Johnson's apartment unannounced, harassing Johnson over text messages, leaving copies of fake text messages purporting to be between King and Johnson on Stettler's vehicle, creating fake pages of Johnson on social media, threatening to get Johnson fired from her place of employment, sending Johnson screenshots of postal inspection forms filled out in Johnson's name, threatening to beat up anyone Johnson was dating, and contacting Stettler's family members.

That same date, the trial court entered a temporary PFA order in favor of Johnson and against King. The order prohibited King from contacting, abusing, harassing, stalking, threatening, or attempting to threaten to use physical force against Johnson, and from possessing or acquiring firearms. The order also prohibited King from stalking or harassing Stettler. The trial

_____

Pa.R.A.P. 1701(b)(3); **Karschner v. Karschner**, 703 A.2d 61, 62 (Pa. Super. 1997) (stating an appeal does not lie from the denial of a motion for reconsideration) (citation omitted). With respect to the portions of the August 4, 2023 order denying his motions for dismissal and recusal, we decline to quash King's appeal from these portions of the order because Johnson did not object to King's failure to file two appeals and the appeal period has expired. **See A.M.W.**, 289 A.3d at 111 n.1 (citing **Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.**, 263 A.2d 448, 453 (Pa. 1970)) (declining to quash appeal where appellant filed one notice of appeal indicating he was appealing two decrees where appellees did not object and appeal period had expired).

court initially scheduled a hearing on May 3, 2023, but continued it pending service of the PFA petition on King. Following a hearing on May 17, 2023, the trial court entered a three-year final PFA order against King.[2] Thereafter, King filed a timely motion for reconsideration, alleging that there was insufficient evidence to support a finding of abuse and that the trial court abused its discretion in crediting Johnson's testimony and not allowing King a full opportunity to testify and present evidence at the hearing. The trial court granted reconsideration and scheduled a hearing on July 25, 2023.[3]

The trial court summarized the evidence from the July 25, 2023 hearing as follows:

> Johnson testified that she and King had previously dated, and that at the time of filing her [PFA p]etition, Johnson believed King was "stalking" her. Johnson testified that King had been previously physically and verbally abusive to her during the course of their prior relationship. King admitted to a prior "altercation" in March [] 2022. Following the parties' last in-person interaction on or about March 15, 2023, Johnson testified that King began questioning her about who she was dating and if she had become engaged. Johnson stated that she had gotten engaged to another

_____

[2] Although the trial court initially denied the PFA petition, it subsequently vacated its decision and granted the petition. N.T., 5/17/2023, at 17, 19-20.

[3] In a May 30, 2023 order, the trial court scheduled a hearing on King's motion for reconsideration for July 25, 2023, and ordered the May 17, 2023 final PFA order to remain in effect until the hearing date. On June 14, 2023, King timely filed a notice of appeal with this Court, which was docketed at 1590 EDA 2023. On June 15, 2023, the trial court entered an amended order—clarifying its May 30 order—to expressly grant reconsideration, reiterate the July 25th hearing date, and reinstate the April 21, 2023 temporary PFA order. Accordingly, this Court sua sponte quashed the appeal. *See* Order, 1590 EDA 2023, 8/7/2023 (citing Pa.R.A.P. 1701(b)(3)(ii); **Cheathem v. Temple University Hosp.**, 743 A.2d 518 (Pa. Super. 1999)).

individual in April 2023. Upon Johnson confirming that she had a fiancé, Johnson testified that King began requesting Johnson repay him for things he had purchased during their previous relationship. Immediately thereafter, Johnson's fiancé's car was vandalized, the tires were slashed, and placed on the car was a photo of Johnson depicting a tattoo on her body that King had paid for while they had been together. Johnson testified that the tattoo was private, only something a limited number of people had knowledge of, and only two people besides King had access to the particular photo that was placed on the car. King was provided with an opportunity to cross-examine Johnson about her allegations[. H]owever, King's questioning focused on items he purchased for Johnson in November 2022 and January 2023. King's testimony further focused on his anger that Johnson did not disclose to him that she had entered into a new relationship, e.g., "I don't do things for other dude's girl" and "she never mentioned her fiancé." When the [trial c]ourt directed King to focus on the relevant time frame regarding the allegations of Johnson's petition, and declined to accept hearsay evidence in the form of text messages between King and other individuals not present in court, King began objecting and speaking over the [trial c]ourt. When the [trial c]ourt stated that it found Johnson's testimony that she was in reasonable fear for her personal safety as a result of King's conduct to be credible, King became belligerent to the extent that the courtroom deputies needed to intervene. Both the testimony and demeanor of the parties were appropriately considered by the [trial c]ourt in the entry of the [July 25, 2023 final PFA o]rder.

Trial Court Opinion, 11/3/2023, at 1-2 (record citations omitted; parties' names supplied).

Following the hearing, the trial court entered a final PFA order, effective for the three-year period from July 25, 2023, to July 25, 2026. The order prohibited King from contacting, abusing, harassing, stalking, threatening, or attempting to threaten to use physical force against her Johnson, possessing or acquiring firearms, and stalking or harassing Stettler. On August 2, 2023, King filed timely motions for reconsideration, dismissal, and recusal, all of

which the trial court denied on August 4, 2023. This timely filed appeal followed. King and the trial court complied with Pa.R.A.P. 1925.

On appeal, King raises the following issues:

1. Was the final hearing, on [July 25, 2023], held in a timely manner pursuant to the Pennsylvania Code, Title 23, Chapter 61, Sec. 6107(a)?

2. Did the [trial c]ourt violate [King's] 14th [A]mendment rights to due process multiple times during the process of determining the order in question?

3. Did [Johnson] prove the abuse by the preponderance of the evidence and did the [trial c]ourt err in a matter of law and abuse its discretion when ruling that she did?

4. Did the [trial] court show bias towards [King] throughout this process and when determining the order in question?

King's Brief at 11-12 (unnecessary punctuation omitted).[4]

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *K.B. v. Tinsley*, 208 A.3d 123, 127 (Pa. Super. 2019) (citation omitted). "An abuse of discretion is more than just an error in judgment, and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Ferko-Fox v. Fox*, 68 A.3d 917, 925 (Pa. Super. 2013).

_____

[4] Johnson did not file a brief in response.

- 5 -

In his first issue, King argues that the July 25, 2023 hearing was not held in a timely manner under section 6107(a) of the PFA Act. King's Brief at 17. According to King, when the trial court expressly granted reconsideration on June 15, 2023, the hearing date had to be held within ten business days thereof. *Id.* at 17-18. He acknowledges that the trial judge was on leave during this time, but claims the same judge did not have to preside over the hearing and that the trial court held other PFA hearings on dates that were within the ten-day timeframe. *Id.* at 18.

Section 6107(a) requires, in pertinent part, that the trial court hold a hearing within ten business days of the filing of a PFA petition. 23 Pa.C.S. § 6107(a). The ten-day period, however, is not unyielding. Section 6107(c) permits the trial court to continue a hearing under subsection (a) and may enter temporary ex parte orders in the interim. *Id.* § 6107(c). Trial courts have discretion to continue hearings pursuant to section 6107 even where they have already issued a temporary PFA order. *Ferko-Fox*, 68 A.3d at 926 (stating the trial court's ability to grant a continuance is not dependent upon the absence of a previously entered ex parte order).

The record reflects that Johnson filed her petition on April 21, 2023, and the trial court promptly scheduled a hearing on May 3, 2023, which was within ten business days of the filing and comported with section 6107(a). The trial court continued the hearing to May 17, 2023—ten business days after the original hearing date—after the sheriff was unable to serve King with the

notice of hearing, temporary PFA order, and petition. As this Court has held that continuances for the protection of the parties' rights are allowable in other contexts, we discern no abuse of discretion by the trial court with respect to this brief continuance to allow service on King. *See id.* (holding trial court did not abuse its discretion in continuing hearing beyond ten days provided in PFA Act where continuance allowed plaintiff to retain counsel, who she had tried to retain earlier in the proceedings).

Following a hearing on May 17, 2023, the trial court entered a final PFA order against King. The trial court then granted King's timely motion for reconsideration on May 30, 2023, as clarified by the amended order entered June 15, 2023, and the trial court scheduled a second hearing for July 25, 2023. The trial court explained that this date was its first available hearing date following the trial judge's medical leave. Trial Court Opinion, 11/3/2023, at 1 n.1. The trial court also reinstated the April 21, 2023 temporary PFA order pending the hearing.

We find no abuse of discretion in the scheduling of the reconsideration hearing at the trial court's first available date upon return from leave. *See Ferko-Fox*, 68 A.3d at 926. Indeed, the very reason there was a second hearing at all was because the trial court granted King's motion for reconsideration. The trial court did not enter a final PFA order against King until after it held an evidentiary hearing, which provided King and Johnson

with the due process safeguards provided under section 6107. Accordingly, King's first issue merits no relief.

In his second issue, King argues that the trial court violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. King's Brief at 19. According to King, his due process rights were violated by trial court's: (1) rescission of its denial of Johnson's PFA petition at the May 17, 2023 hearing; (2) entry of its June 15, 2023 order expressly granting King's request for reconsideration; and (3) disparate treatment of the parties during the proceedings. *Id.* at 20-27.

We begin with the trial court's decision to rescind its denial of Johnson's petition. At the outset, we note that the trial court granted King's motion for reconsideration, vacating its May 17 decision. As such, the trial court's May 17 decision was a nullity. *See D'Elia v. Folino*, 933 A.2d 117, 123 n.3 (Pa. Super. 2007) (stating trial court's grant of reconsideration served to vacate prior order, rending prior order a legal nullity).

Regardless, King's claimed due process violation stemming from that proceeding is meritless. The record reflects that at the original hearing on May 17, 2023, Johnson presented her own testimony and rested her case. N.T., 5/17/2023, at 2-10. King was then given an opportunity to present his side of the story. *Id.* at 10-14. After King stated, "[s]he's lying essentially," the trial court responded, "I'm going to stop you right now." *Id.* at 13-14. King did not stop, instead repeating, "[s]he's lying." *Id.* at 14. King continued

to repeatedly interrupt the trial court and disregarded its directives for him to stop. *Id.* at 14. Nonetheless, the trial court, while noting that King was "worked up," ruled against Johnson. *Id.* 15-16. Johnson attempted to present further evidence, but the trial court rejected it because she had already rested, and stated that its order was "without prejudice to come back here and re-file this." *Id.* at 16-17. King began to interrupt the trial court again, prompting a directive from the deputy sheriff for him to "[b]e quiet." *Id.* at 17. The trial court warned King, "I'm watching your behavior right now, and there seems to be a nervousness that's got me concerned." *Id.* at 17-18. King still did not stop talking. *Id.* at 18. At that point, the trial court stated, "I'm starting to second guess myself here as to whether or not maybe I'm reading wrong what's going on here. Your reaction to this is starting to make me think that maybe there was something that's not credible about what you're saying." *Id.* at 19. King continued to talk and interrupt the trial court, at which point the trial court held:

> I am vacating what I just ruled upon, and I am going to grant the PFA. I have serious concerns about the manner in which [] King has been handling himself here, and his behavior is starting to become … indicative that perhaps he is the one responsible for these ongoing messages in this context.
>
> So I am going to grant the PFA now. I'm going to grant the costs. As I've stated, I vacated my initial decision to deny the PFA based upon what's been observed today in [c]ourt. I find [Johnson] credible. I find that she does have reason to be in fear of [King], that he is a threat to her.

*Id.* at 19-20.

- 9 -

Trial courts are permitted to modify or rescind any order within thirty days after its entry, subject to limitations not relevant here. 42 Pa.C.S. § 5505. "The [trial] court's exercise of its power under [s]ection 5505 of the Judicial Code is almost entirely discretionary; this power may be exercised sua sponte, or may be invoked by a request for reconsideration filed by the parties." **Anderson v. Anderson**, 544 A.2d 501, 504 (Pa. Super. 1988).

Here, the trial court's ability to view firsthand the parties' demeanor and behavior during the hearing was critical to its credibility determinations. As the hearing proceeded, King's disruptive behavior and disregard for the trial court's directives influenced the trial court's opinion and affected its decision. Because the trial court was well within its discretionary powers to rescind its decision and grant the PFA petition, King's due process rights were not violated. **See id.**; 42 Pa.C.S. § 5505.

King next claims a due process violation based upon the trial court's entry of its June 15, 2023 order expressly granting King's request for reconsideration. King's Brief at 23. Without citation to authority, King claims that the trial court's grant of reconsideration "means the [trial c]ourt agreed and acknowledged that it violated [King's] due process rights." **Id.** at 22. King takes issue with the fact that the first order granting reconsideration kept the May 17 final PFA order in effect, while the amended reconsideration order kept the April 21 temporary PFA order in effect. **Id.** at 25. King baldly asserts

- 10 -

the amended order "was only filed in response to [King's] filing a notice of appeal and "only to keep [King's] appeal from being heard." *Id.* at 24-25.

We reject King's claim. The trial court exercised its discretion when it granted his request for reconsideration within thirty days of its May 17 final PFA order. *See* 42 Pa.C.S. § 5505. Once again, it was within the trial court's discretion to modify its order, which it also did within the thirty-day timeframe. *See id.*

In his final due process claim, King asserts that the trial court allowed Johnson to "testify fully and present evidence" while it did not allow him the same. King's Brief at 25. King asserts he was "cut off, denied the opportunity for the [trial] court to review his evidence[,] and required to have witnesses to corroborate anything he said." *Id.* at 26. He also complains that Johnson was allowed to testify at both the May 17 and July 25, 2023 hearings, while King "was only given one opportunity to testify" on July 25, 2023. *Id.* at 26.

Our review of the record belies King's claim, as the trial court provided King the opportunity at both hearings to cross-examine witnesses (Johnson) and present evidence in his defense. *See* N.T., 7/25/2023, at 10-28; N.T., 5/17/2023, at 9-20. To the extent the trial court curtailed King's ability to present his defense, it was of his own making through his disruptive and defiant behavior at both hearings. *See, e.g.,* N.T., 7/25/2023, at 32 (sheriff's deputy directing King, "[s]ir, don't talk when the Judge is talking" and King

responding, "I'm allowed to. It's the rules of court. I'm allowed to. It's the rules of court."). Accordingly, none of King's due process claims merit relief.

In his third issue, King argues that Johnson did not prove abuse by a preponderance of the evidence warranting the entry of a final PFA order. King's Brief at 27. He asserts that the trial court abused its discretion in finding Johnson credible because she "did not present any evidence at all" and failed to present corroborating witnesses or evidence of photographs, text messages, social media posts, or police reports. *Id.* at 27-28, 31. King repeatedly states that Johnson lied to the trial court, pointing to her testimony regarding the last time she was with King. *Id.* at 29-30, 32. He argues that Johnson's testimony was "very vague," did "not allege any violence or threats of violence," and differed from the first hearing. *Id.* at 30. In contrast, according to King, "his story never changed and he presented credible evidence." *Id.* at 33.

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.

***B.K.P. v. J.R.B.***, 303 A.3d 456, 459 (Pa. Super. 2023) (citation omitted). "This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it." *Id.* (citation omitted). Further, we are not entitled to reweigh the evidence. ***K.B.***, 208 A.3d at 130 (citation omitted).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (citation and quotation marks omitted). In relevant part, the PFA Act defines abuse as a sexual or intimate partner knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. 23 Pa.C.S. § 6102(a)(5). The Act does not seek to determine criminal culpability; a petitioner need not establish that abuse occurred beyond a reasonable doubt, only by a preponderance of the evidence. *K.B.*, 208 A.3d at 128 (citation omitted); *see also* 23 Pa.C.S. § 6107(a). The preponderance of the evidence standard "is defined as the greater weight of the evidence, i.e., to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *K.B.*, 208 A.3d at 128 (citation omitted). "A PFA petitioner's testimony alone, if believed by the trial court, may constitute sufficient evidence of abuse." *E.K.*, 237 A.3d at 523.

The record reflects that Johnson believed King was stalking her and King had a history of being verbally and physically abusive toward her. N.T., 7/25/2023, at 3, 5, 10. Johnson described King as "malicious" when he gets upset, and King admitted to a prior physical altercation with Johnson in March 2022, following which he received anger management treatment. *Id.* at 5,

- 13 -

27. In March 2023, King faced possible incarceration and Johnson "was trying to be there for him," but when King saw an engagement ring on her finger, it "triggered" him. *Id.* at 5-6. Thereafter, King wanted Johnson to repay her for things he had bought when they were dating. *Id.* at 6. Within a "couple days" of learning of Johnson's engagement, Stettler's car tires were slashed. *Id.* In addition, a photograph of a tattoo that Johnson had gotten—and King had paid for—while they were dating was placed on Stettler's car. *Id.* at 6-7, 18. The tattoo was private and only two individuals, besides Johnson and King, had access to the photograph. *Id.* at 6. King also had a history of threatening to "beat up," "punch," and "break" the face of another person Johnson had dated. *Id.* at 9-10. Further, the record confirms the trial court's account, detailed above, of King's cross-examination of Johnson and his insolent behavior during the July 25, 2023 hearing. *See id.* at 13-14, 16-18, 23-24, 30-32; *see also* Trial Court Opinion, 11/3/2023, at 2.

Reviewing the evidence in the light most favorable to Johnson, and granting her all reasonable inferences, we conclude the evidence was sufficient to sustain the trial court's grant of her PFA petition by a preponderance of the evidence. *See B.K.P.*, 303 A.3d at 459; *see also T.K. v. A.Z.*, 157 A.3d 974 (Pa. Super. 2017) (holding evidence of abuse was sufficient under section 6102(a)(5) of the PFA Act where respondent-appellant had a history of harassing and stalking petitioner-appellee; followed her in his vehicle, in the grocery store, at sporting events, and in other locations;

repeatedly honked his car horn as he passed her house; circumvented a custody order to communicate with her via a court-monitored app by having children and others scream into the phone at her; and petitioner-appellee was concerned for her safety and feared escalation of his behavior). The trial court found Johnson's testimony to be credible. *See* N.T., 7/25/2023, at 30 (trial court stating, "I've considered the testimony, and I do find that [] Johnson's testimony is credible"); *see also E.K.*, 237 A.3d at 523. In repetitively arguing in his brief that Johnson was lying, King is essentially asking us to re-weigh the evidence and believe his version of events over Johnson's, which we may not do. *See K.B.*, 208 A.3d at 128. Further, we reject King's assertion that Johnson failed to present any evidence. Her testimony alone, which was believed by the trial court, was sufficient evidence of abuse. *E.K.*, 237 A.3d at 523. Accordingly, King's sufficiency-of-the-evidence claim fails.

Finally, King argues that the trial court was biased against him throughout the proceedings. King's Brief at 33-34. According to King, this bias is evident because the trial court lied "to cover [its] tracks," used King's "alleged behavior" at the hearing as evidence, and failed to hold a hearing within ten days. *Id.* at 34. King further bases his claim on the trial court's decision to vacate its denial of the PFA petition and its "blatant lie" about King's behavior at the May 17 hearing, and its subsequent decision to expressly grant reconsideration one day after he filed an appeal. *Id.* at 36-38. King also makes reference to an anecdote that he believes establishes

the trial judge's bias.  He states that after the May 17 hearing, he went to the district attorney's office to report a crime, and while in the waiting area, he observed the trial judge enter and go to the back.  *Id.* at 35.  Shortly after, King claims, a detective came out to speak with King but "refused to even look at" his "evidence."  *Id.* at 35.  King finds this behavior "extremely suspicious."  *Id.* at 35.[5]

While unclear in his brief, to the extent King is appealing the denial of his motion to recuse, our scope and standard of review are as follows.

> The denial of a motion to recuse is preserved as an assignment of error that can be raised on appeal following the conclusion of the case.  We review a trial court's decision to deny a motion to recuse for an abuse of discretion.  Indeed, our review of a trial court's denial of a motion to recuse is exceptionally deferential.  We extend extreme deference to a trial court's decision not to recuse.  We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially.  Hence, a trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned.

_____

[5]  King additionally takes issue with the trial court's consideration of Johnson's testimony at the May 17 hearing regarding a comment to a post on Stettler's grandmother's Facebook account.  King's Brief at 39.  King claims the trial court improperly considered this testimony where the grandmother was not present as a witness, but refused to let him present similar hearsay evidence at the July 25 hearing, and then lied when it said it was not considering the Facebook testimony.  *Id.* at 39-40.  As stated above, the May 17 decision is a nullity following the grant of reconsideration.  *See D'Elia*, 933 A.2d at 123 n.3.  Furthermore, at the July 25 hearing, the trial court expressly stated that it was not considering Johnson's testimony regarding the Facebook post.  N.T., 7/25/2023, at 24, 28.

***V.L.-P. v. S.R.D.***, 288 A.3d 502, 523 (Pa. Super. 2023) (citation omitted).

"A party seeking recusal must assert specific grounds in support of the recusal motion before the trial judge has issued a ruling on the substantive matter before him or her." ***Id.*** (citation and quotation marks omitted). "Recusal is required whenever there is a substantial doubt as to the jurist's ability to preside impartially." ***Id.*** "However, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." ***Id.***

We reject King's bias claim as wholly without foundation. Initially, the record reflects that King did not assert his "suspicion" involving the district attorney's office before the trial court entered its July 25, 2023 final PFA order. ***See id.*** Even if he had, King's bald, unsupported hunch—wherein he admittedly "does not know why"[6] the trial judge entered the district attorney's office—does not reveal any compromise of the integrity, fairness, or impartiality of the proceedings. Further, as discussed above, we reject the complaints King lodged against the trial court regarding the timeliness of the hearing, recission of its denial of the PFA petition, and amended reconsideration order. The record does not disclose any indication of actual

_____

[6] King's Brief at 35.

- 17 -

bias, nor the appearance of impropriety, by the trial court. Simply because King was dissatisfied with the outcome of the proceedings does not mean that the trial court showed bias. *See V.L.-P.*, 288 A.3d at 525 (affirming denial of recusal motion and stating "[s]imply because the court ultimately disagreed with [a]ppellant's position following the hearing, does not mean the court showed bias"). Discerning no abuse of discretion by the trial court, we conclude King's fourth claim merits no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/20/2024